#### FOR THE

## COUNTY OF WINDSOR.

### MARCH TERM, 1848.

PRESENT,

Hon. STEPHEN ROYCE, Chief Judge,
Hon. ISAAC F. REDFIELD,
Hon. HILAND HALL,      } Assistant Judges.
Hon. CHARLES DAVIS,

---

### Samuel G. Pratt v. Orleman A. Bryant and Daniel Ransom.

If the owner of goods intentionally intermingle them with goods of the same kind belonging to another person, but through negligence, merely, and not wilfully, or fraudulently, his property in them is not lost; but his remedy is not by action of book account, even though his goods may have been used by the owner of the goods with which they were thus intermingled.

In this case the plaintiff, believing that there was a contract between himself and the defendants for the delivery of a quantity of wood,—although in fact no such contract had been concluded,—placed a quantity of wood upon the premises of the defendants, where it was so intermingled with other wood, belonging to the defendants, that it could not be distinguished. The defendants, when called upon for payment, denied having contracted for the wood. The plaintiff then offered to take away the wood; and the defendants told him he might, but that he must be careful, that he did not take any wood belonging to them. In consequence of the wood being intermingled, the plaintiff was una-

ble to select his wood from the mass, and did not take any away; and the wood was all used by the defendants,—but at what time did not appear. And it was held, that the plaintiff could not sustain book account against the defend ants for the wood so used.

BOOK ACCOUNT.   Judgment to account was rendered in the county court, and an auditor was appointed, who reported that the plaintiff presented an account against the defendants, for allowance, for a quantity of wood, in reference to which the facts were as follows.

In January, 1841, the plaintiff, being indebted to one Ira Powers, proposed to pay him in wood.  Powers said he was indebted to the defendants, and that if they would receive wood from the plaintiff on account of that indebtedness, it would answer to him as well as the money.  The plaintiff then went to the defendants' store, and inquired of Bryant, whether they would receive wood in payment of the account against Powers; and Bryant said they would.  The defendants then had a potash, situated about eighty rods from their store; and the plaintiff and Bryant spoke of the prices for different kinds of wood, delivered at the potash; but they made no bargain in reference to the wood, which the plaintiff wished to draw to the defendants in payment of the account against Powers.  The plaintiff, however, understanding that they had made a bargain that he should deliver wood at the defendants' potash in payment of Powers' account, did deliver there the quantity of wood charged in his account.  The two loads first drawn by the plaintiff were piled up near one end of the potash; but before he had drawn any more, other wood, drawn by other persons, was thrown upon the wood so piled up, and afterwards the wood drawn by the plaintiff was thrown promiscuously with other wood, drawn by others,—there being a large quantity of wood drawn to the wood yard for the use of the potash.  The wood so drawn by the plaintiff was not measured by the defendants, or by any one in their behalf, nor were the defendants, or any person employed by them, notified that the plaintiff was drawing and delivering the wood, during the time he was engaged in drawing it,—which was about eight days.  In the spring following the delivery of the wood the plaintiff left an account of the wood at the store of the defendants.  Bryant, who was the active

partner, was then absent, and did not see the account until May, 1841; and then he refused to make the plaintiff any allowance for it, as he had not, before the presentation of the account, been apprised that the plaintiff had drawn any wood to the potash. The plaintiff then offered to take the wood away from the potash; and Bryant told him, that if he had drawn any wood to the potash, he might take it away,—but that he must be careful and not take away any of his, Bryant's, wood. In consequence of the wood drawn by the plaintiff being mixed with wood drawn by others, in the manner above stated, the plaintiff could not select his wood from the mass, and did not take any away; and it was used in the potash of the defendants,—but at what time did not appear. The defendants did not give Powers credit for the wood, nor pay the plaintiff for it; and the plaintiff afterwards paid his debt to Powers. Upon these facts the auditor submitted to the court the question as to the plaintiff's right of recovery.

The county court accepted the report, and rendered judgment thereon for the plaintiff, for the value of the wood. Exceptions by defendants.

*O. P. Chandler* for defendants.

I. The plaintiff cannot recover, for the reason that he delivered the wood *without* contract, measurement, delivery, or acceptance; and if he labored under a mistake, his mistake cannot affect the rights of the defendants.

II. The plaintiff cannot recover upon the ground, that, although there was no contract, the wood was actually used by the defendants.

1. The plaintiff voluntarily commingled his wood with that of the defendants; and in cases of *voluntary commixture* the authorities all agree, that he who thus destroys the identity of his property must be the sufferer. 2 Bl. Com. 405. *Gordon* v. *Jenney,* 16 Mass. 465. *Shumway* v. *Rutter,* 8 Pick. 443. *Hart* v. *Ten Eyck,* 2 Johns. Ch. R. 108. 1 Story's Eq. 448, 574. 3 Dane's Abr. 117.

2. If this is to be considered an *accidental commixture,* yet the goods were neither capable of separation by identifying each particular, nor were they of *like value* and quantity, so that each party

Pratt *v.* Bryant et al.

might take his aliquot part; "the injured party therefore takes the whole." 2 Kent 365. Story on Bail. 44.

3. Even if a recovery can be had in such a case of commixture, yet it was incumbent on the plaintiff to show that the .wood was used by the defendants *after the presentment of his account;* and this was not shown. *Shumway* v. *Rutter*, 8 Pick. 443.

4. The defendants can be charged, if at all, only in the action of *case*,—certainly not in book account. 3 Dane's Abr. 120.

*Tracy & Converse* for plaintiff.

It is often true, that a party is liable to pay for property, for which he never made any special undertaking to pay; and that is sometimes true, where the defendants had no notice, .at the time of receiving the property, that the plaintiff had any claim to it. 1 Chit. Pl. 92, 341. *Straton* v. *Rastall*, 2 T. R. 366. *Moses* v. *Macfarlan*, 2 Burr 1005. 3 B. & P. 161. *Clarke* v. *Shee et al.*, Cowp. 197. 7 Greenl. 457. *Conant* v. *Raymond*, 2 Aik. 243. 2 Stark. Ev. 94, 636. 1 Taunt. 112. *Hill* v. *Perrott*, 3 Ib. 274. 5 East 39, note (*a.*) *Hall* v. *Davis*, 3 N. H. 384. *James* v. *Leroy*, 6 Johns. 274. In this case the defendants have consumed the property, and by so doing have ratified the trade; the law raises the promise. If the defendants had no notice previously, they certainly had in May, 1841. It is not to be inferred, that the wood was consumed at that time; and if used after that, the defendants are liable. They forbade the plaintiff's taking away his wood,—or, what was tantamount to it, they knew that the conditions prescribed could not be complied with. But the defendants are liable to pay for the wood, without reference to the time when it was used. If consumed previous to the time when the defendants first had knowledge of its delivery, they should have allowed the plaintiff to take away an equal quantity of wood. *Shumway* v. *Rutter*, 8 Pick. 443, 448. Story on Bail. 45, § 40. The fact, that the wood had been mixed with other wood by the ꞌplaintiff, cannot afford a sufficient reason why he should lose it; he was guilty of no fraud. *Bond* v. *Ward*, 7 Mass. 127. 5 N. H. 364. 8 Pick. 443. 11 N. H. 557. *Ryder* v. *Hathaway*, 21 Pick. 298.

Pratt *v.* Bryant et al.

The opinion of the court was delivered by

REDFIELD, J. This does not seem to be such a case of fraudulent commixture of goods, as to produce a forfeiture on the part of the plaintiff. The rule laid down by Justice MORTON, in *Ryder* v. *Hathaway*, 21 Pick. 298, seems, to us to be the true rule upon this subject,—that if the intermixture were intentional, but by some mistake of the facts, the property was not lost. That seems to be the present case. The plaintiff supposed he had made a contract of sale; but in fact he had not. This was his innocent mistake. He may therefore recover either his property, or the pay for it. He should first show a demand and refusal, unless the defendant have used it, knowing it to belong to the plaintiff, which is not this case. If the defendant use it by mistake, or refused to suffer the plaintiff to take it away,—one of which is virtually true in this case,—he is liable in trover; or if he have sold the property and received money for it, the plaintiff may waive the tort and sustain assumpsit for the money. 21 Pick. 306, citing *Bond* v. *Ward*, 7 Mass. 127.

But we think no action of assumpsit will lie, unless in a case like the one last put, or when there has been a sale, either express, or implied, and that the action of book account could not with the least propriety, be extended to a case like the present. The present case, upon the most favorable construction for the plaintiff, is the putting of his wood with the defendant's; under a mistake of facts, without the fault of the defendants. There was no contract of sale; but the contrary is expressly found. We are to understand, that the plaintiff was not justified in supposing there was any contract of sale closed; for if that were the case, it would amount to a contract. The fault, then, was that of the plaintiff,—but not wilful, or fraudulent, but negligent.

Can the plaintiff, then, be considered in any more favorable light, than if he had left his wood upon the defendants' land, as a naked deposit, and the defendants had used it without his consent. And in no such case could an action of book account be maintained. Nor could such action be maintained upon the defendants, refusal to deliver the wood upon request, or to permit the plaintiff to remove it. This action will never lie for damages sustained by reason of any breach of duty as a bailee, whatever be the character of the bailment. Nor will this action lie to recover damages, which are in

43

their nature the result of a tort.  The only ground of recovery here is for the defendants' refusal to allow the plaintiff to take away so much wood, as he put there by mistake.  This they should have done ; but their refusal was a mere tort ; and the damages could no more be recovered in this action, than in all cases of conversion of personal chattels.

There are, in our opinion, strong reasons, in the justice of the case, why this action should not be extended to a case like the present.  The commixture is not without the fault of the plaintiff, although not fraudulent in such a sense as to work a forfeiture.  In all such cases the claimant will be supposed to be first in fault, in mixing his goods with his neighbor's, and to be wholly conversant of the facts.  To allow him, then, to come into court for redress, upon the force of his own testimony, and virtually excluding the innocent party, who is not supposed to have equal knowledge of the fact, not having been present at the time of the commixture, will be to allow a party to derive a positive advantage from his own wrong.  It is sufficiently favorable to the plaintiff to relieve him from the forfeiture and to allow him to recover upon common law proof.

Judgment reversed and judgment for defendants.