Frost *v.* Willard.

---

Same Term. *Before the same Justices.*

## Frost & Rider *vs.* Willard.

An affidavit, made by a plaintiff to a justice of the peace, upon applying for an attachment against a defendant, stating that the application is made on the ground that the defendant " has assigned *or* secreted his property *with intent to defraud his creditors,*" although according to the words of the statute, is insufficient, unless the facts and circumstances stated therein are enough to justify a belief that the defendant has assigned or secreted his property with intent to defraud his creditors.

Frost *v.* Willard.

The rule that a man may lose his own property by mixing it with the property of another, applies only to cases where the property of one can not be distinguished from that of the other, after the admixture.

The sections of the statute declaring that upon every sale, assignment by way of mortgage, or mortgage of goods and chattels, there shall be a delivery and a continued change of possession, otherwise such sale, &c. shall be deemed fraudulent as against creditors, do not apply to any cases except when the goods and chattels have an existence, and can be delivered.

When the contract relates to goods thereafter to be manufactured, it does not come within the meaning of the statute. In such case there must be fraud in fact, to render the contract void.

Where the plaintiffs had possession of 190 barrels, 40 of which were their property, and under a contract with F. the manufacturer, they had an absolute right to sell the others, retain out of the proceeds what was due them from F., and account to him for the surplus, and the defendant, by virtue of an attachment against the goods of F. took the barrels out of the plaintiffs' possession; *Held* that the plaintiffs were entitled to recover the amount of their advances to F.

TROVER, for a quantity of barrels, tried at the Essex county circuit in January, 1848, before Justice Paige. On the trial, George H. Blinn was called as a witness on the part of the plaintiffs, and testified that he lived at Port Henry and knew the plaintiffs, who lived in Bridport, Vt., and were merchants; the defendant lived in Port Henry; that he knew Bartholomew Foley, who lived at Port Henry. The plaintiffs' counsel then introduced in evidence the blotter of their store, or original book of entry, on which was a charge against Foley of $2,85, under date of Nov. 27, 1845, for goods that day sold him; below which was written a contract or agreement signed by Foley, in the words and figures following:

" The above charge is made to Bartholomew Foley with full understanding and agreement that Frost & Rider are to have and hold and sell all the barrels that I make this season coming, of 1846, and all staves, poles and so forth are by said consideration to be Frost & Rider's, for the security of money, goods and so forth, which I may call on them to advance from time to time, to get stuff and carry on said business. When said barrels are sold to best advantage, Frost & Rider first to have their pay, and interest of the net proceeds of said barrels, and I have the

Frost *v.* Willard.

balance on settlement with them after said barrels are sold by them.　　　　　　(Signed)　　　BARTHOLOMEW FOLEY."

This witness proved the signature of Foley to the above contract; and he further testified that the plaintiffs paid him for Foley's board; that Foley boarded with him from April to Dec. 1846, and had no wife. That it amounted to rising of $50. Foley was engaged in making barrels. That he heard Frost give Foley orders to buy materials and draw on him, and he would advance all that was necessary to carry on the business. This was the fore part of August, 1846. The witness did not know how many he had made at that time. There were 160 or 180 headed in four hoops. Frost, at the time of this conversation, informed Foley and the witness that he then took possession of that stuff and the barrels then on hand—he put them into possession of John Byron. Byron was a cooper, and agreed to store what barrels were then made, and should be made afterwards. The barrels were then in his (Byron's) shop. Foley gave the witness a bill of sale of the barrels, dated 7th August, 1846, in order to secure a bill he had against Foley for board. The witness took possession of the barrels. The plaintiffs' counsel then presented in evidence said bill of sale, dated August 7, 1846. Also an assignment of said bill of sale from said Blinn to the plaintiffs, dated August 11, 1846, indorsed on the back of the bill of sale. The plaintiffs also produced and proved an agreement in writing given by them to said Blinn, bearing date on the same day, in the words and figures following :

"We agree to pay G. H. B. one dollar and sixty-three cents for each week's board of B. F. during the time he may board, making and finishing our barrels. Dated Moriah, August 11, 1846.　　　　　　FROST & RIDER."

The witness heard the defendant say, he took the barrels in October or November. There were about 180—some finished and some unfinished; the finished barrels were worth 62½ cents and the unfinished 25 cents. The plaintiffs' counsel then called John Byron as a witness, who testified that in August, 1846, Frost agreed with him to store the barrels and the timber and take

Frost *v.* Willard.

care of them. Witness hired the shop at the time. Foley was to finish the barrels. They were put over head, in the upper part of the same shop. There was 100 and odd finished when the defendant took them—50 or 60 unfinished. Witness was not there when the defendant took them away. That he took them the latter part of November or December. The witness rented the whole shop from Foot. He told Foley he might work there, in the same shop and room with him. He put the barrels up above in loft, from time to time as he made them; they were occasionally carried down to be hooped, and then carried back again; that Mr. Meacham took 190 barrels down to the wharf; Mr. Rider came for them, and they drew them away. Forty of them were barrels that the witness made and sold to Frost & Rider. The plaintiffs agreed to pay the witness for the use of shop while Foley was finishing the barrels. The barrels which Blinn made and sold to the plaintiffs and those which Foley made were all put up in the shop together, and all carried together to the dock at one time. Rider was then present. Blinn delivered these barrels of his to Frost & Rider on a store debt that he owed them. The plaintiffs were to sell them and allow him the avails of what they sold for.

The plaintiffs' counsel then called Wm. Meacham, who testified that Rider employed him to draw some barrels to the wharf of Mr. Foot of Port Henry; that he drew 190, and took them from the shop where Byron and Foley worked. Rider delivered them to him. A man by the name of Howard drew them away from the wharf. Willard, the defendant, forbade Rider taking them away. Saw this man Howard unload the barrels at Willard & Dowd's store. Willard was also there. The plaintiffs' counsel then recalled G. H. Blinn, who testified that he thought he saw Willard assist in loading the barrels. The barrels were left on Foot's wharf. Willard said it was his duty to take care of the property which he had attached. Willard was a constable of the town of Moriah. Howard refused to load the barrels. The defendant then took off his coat and loaded them. The plaintiffs' counsel then rested his case.

On the part of the defendant was offered in evidence the rec-

Frost *v.* Willard.

ords of proceedings in a justice's court before John E. McVine, esquire, consisting of an application in writing, an affidavit, the requisite bond, attachment against Foley, inventory, return, judgment and execution and the return thereon; by which records it appeared that the attachment was issued on the 25th day of November, 1846, and was returnable the 6th day of December, 1846, before the said John E. McVine, esquire, a justice of the peace in said county of Essex, residing in Moriah. It also appeared that the same was issued under the act to abolish imprisonment for debt and to punish fraudulent debtors; and that there was no appearance on the part of the defendant Foley in said suit. The plaintiffs' counsel objected to the introduction of said proceedings, on the ground that the affidavit on which the attachment was issued was informal and insufficient, and did not contain the requisite facts to give the justice jurisdiction and authority for issuing it; and that although, as a general rule, process regular on its face is sufficient for the protection of the officer even if issued without authority, yet that inasmuch as the officer attempted to overthrow the sale of Foley, the debtor, on the ground of fraud, he must go back of his process of attachment, and show authority for issuing it, as the plaintiffs claimed under an older and better title unless it could be impeached for fraud. The judge sustained the objection, and decided that the affidavit was insufficient to authorize the issuing of said attachment and to give the justice jurisdiction of said cause, and therefore the sale of Foley could not be impeached for fraud; but that he would admit the attachment, judgment, proceedings and execution for the purpose of connecting the defendant with Foley the debtor showing a title derived from him, and the same was admitted by his honor the judge for that purpose; to which decision the defendant's counsel excepted. The defendant's counsel then moved for a nonsuit, on these grounds: 1. That the agreement between the plaintiffs and Foley was executory, and no sale. 2. If construed to be a mortgage, not being filed in the town clerk's office and no change of possession being proved, the plaintiffs could not recover for his personal interest in the barrels. by way of lien. 3. The intermixing the other

barrels with those of Foley, by the plaintiffs, was a forfeiture of their right to recover for them. The court refused to nonsuit, and the defendant excepted. The plaintiffs' counsel then introduced divers witnesses to prove the amount of the plaintiffs' advances and lien upon the barrels under said contract, in relation to the value of the same, and the same was stipulated and agreed upon by the counsel of the respective parties at $83; and the counsel for the defendant agreed that if a verdict was taken in favor of the plaintiffs, the same might be for that amount. The counsel for the defendant then asked the court to charge the jury, that if they believed there was no change of the possession of the barrels they should find for the defendant. The court refused so to charge, and the defendant excepted. The court then charged the jury, that the contract between the plaintiffs and Foley, and their advances under it, and the taking possession of the barrels, although they were not taken from the personal occupation of Foley, created such a claim or lien upon, or mortgage interest in the barrels, as entitled the plaintiffs to recover to the amount thereof; and that there was no such intermixing of the barrels shown as worked a forfeiture of the plaintiffs' right to recover to that extent; and the defendant not having shown any right to intermeddle with the barrels, the plaintiffs were entitled to the extent of their lien upon or mortgage interest in the barrels; to which charge the defendant's counsel excepted. Whereupon the jury found a verdict for the plaintiffs for $83. The defendant, upon a case, moved for a new trial.

*M. T. Clough*, for the plaintiffs.

*Jonathan Tarbell*, for the defendant.

*By the Court*, CADY, J. The first inquiry is, was the affidavit sufficient to warrant the attachment? It is stated in the affidavit " that the application for an attachment against the property of the said Bartholomew Foley which accompanies this affidavit, is made on the ground, that the said Bartholomew Foley has assigned or secreted his property *with intent to defraud his creditors.*" This is according to the words of the statute,

Frost *v.* Willard.

but it is not to be supposed that the deponent intended to swear to a fact within his knowledge, that Bartholomew Foley had *assigned or secreted his property. with intent to defraud his creditors.* Bartholomew Foley's intent could not be known to the deponent; and an affidavit in the words of the statute has repeatedly been held insufficient. (*Ex parte Robinson,* 21 *Wend.* 672.) In that case proceedings were had against an absconding debtor. And by the statute, (1 *R. S.* 765, § 1,) authorizing such proceedings, an application must be made in writing, verified by the affidavit of the creditor, stating amongst other things, "the grounds upon which the application is founded." " The facts and circumstances to establish the grounds on which such application is made shall also be verified by the affidavit of two disinterested witnesses." The witnesses, in that case, stated that the debtor "*had left the state with intent to defraud his creditors.*" That was the fact to be proved; yet the court held the affidavit insufficient, because the *facts and circumstances* stated in the affidavit did not prove the grounds upon which the application was made.

In the case before the court, it is alledged in the affidavit that the application for the attachment was made " on the ground that the said Bartholomew Foley had assigned *or* secreted his property with intent to defraud his creditors ;" and the affidavit was insufficient unless the facts and circumstances stated therein were sufficient to justify a belief that the debtor *had assigned or secreted his property with intent to defraud his creditors.* I have read the affidavit attentively, and can not discover that the deponent has stated a single fact or circumstance tending to prove that the debtor had either assigned or secreted his property with intent to defraud his creditors. The affidavit furnishes no evidence that Foley *had* assigned *or* secreted his property at all. The affidavit shows that the object in obtaining the attachment was, to prevent the barrels which Foley had made and was making from being transported to Vermont.

Although the affidavit was insufficient, the attachment would have protected the defendant against any action which might have been brought by Foley. But the attachment only author-

ized the defendant to take the goods of Foley. The barrels in question were the property of the plaintiffs, as between them and Foley; and the defendant, in order to make out a defense, must show that the barrels were the property of Foley, as between them and Foley, and the defendant, in order to make out a defense, must show that the barrels were the property of Foley, as between him and the plaintiffs. The judge rightfully decided that the affidavit was insufficient.

The next question is, ought the defendant's motion for a nonsuit to have been granted? The plaintiffs proved that they had possession of the barrels, before the attachment was issued, and as to forty of the barrels their title could not be questioned, unless they had lost their title because they put the forty barrels which they purchased of Mr. Byron with those made by Foley. There is no evidence in the case to show that the barrels made by Byron and those made by Foley could not easily be distinguished. The rule that a man may lose his own property by mixing it with the property of another, applies only to cases where the property of one can not be distinguished from that of the other, after the admixture. (3 *Black. Com.* 405, *ch.* 26, § 7.) One case there put by way of showing the rule, is where one casts his gold into another's melting pot or crucible; in such case, for the purpose of guarding against fraud, the law gives the whole to the owner of the pot.

" The counsel for the defendant asked the court to charge the jury that if they *believed* there was no change of possession of the barrels they should find for the defendant. The court refused so to charge, and the defendant's counsel excepted."

Unless the court was bound to charge precisely as requested, there was no error in refusing so to charge. In this case there were forty barrels of which Foley never had possession. And had the court charged as requested it would have been erroneous, and the court's refusal to charge as requested was correct.

The remaining question is, was the charge of the court such that a new trial on that account ought to be granted? The substance of the charge was that the plaintiffs were entitled to recover the amount of all their advances to Foley; which the.

parties agreed amounted to $83. The whole merits of the case were covered by this charge, and if upon the whole case the plaintiffs were not entitled to recover, the charge was erroneous, and a new trial ought to be granted.

One objection made to the plaintiffs' right to recover was, that the written contracts or mortgages under which they claimed, had not been recorded in the town clerk's office. By 2 *R. S.* 2d *ed.* 70, § 5, it is declared, " every sale made by a vendor of goods and chattels in his possession, or under his control, and every assignment of goods and chattels by way of mortgage or security, or upon any condition whatever, unless the same be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the things sold, mortgaged or assigned, shall be presumed to be fraudulent and void as against" &c. And by the 9th section it is declared that " every mortgage, or conveyance intended to operate as a mortgage, of goods and chattels, hereafter made, which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void, unless the mortgage or a true copy thereof shall be filed," &c. It will be perceived that neither of these sections can be applied to any cases except when the goods and chattels respecting which the contract is made have an existence and can be delivered. When the contract relates to goods thereafter to be manufactured, it can not come within the meaning of the statute. In such case there must be fraud in fact, to render the contract void.

In this case the contract between the plaintiffs and Bartholomew Foley was made in the fall of 1845, and so far as this case is concerned, related to barrels to be made in 1846; and the contract on the part of Foley was that the barrels which he should make during the season of 1846 should be the property of the plaintiffs, as security for money and goods which he might call on them to advance from time to time to get stuff and carry on said business. They were to sell the barrels, retain the sums due to them, and pay the surplus to Foley. The public good requires that contracts of this kind should be upheld. When a

manufacturer is unable to prosecute his business without aid from others, the industry of the country may be materially promoted by allowing him to pledge his future earnings to those who will make advances to him. The sections of the statute above referred to can have no application to contracts of that description.

The barrels respecting which the contract in this case was made had no existence when the contract was made. They could not therefore have been delivered. They were not to be manufactured until the next season. And as early as the 11th of August, 1846, the plaintiffs had the actual possession of the barrels; and this was more than three months before the attachment was issued.

The case is briefly this : the plaintiffs had possession of 190 barrels, 40 of which were their property—and they had an absolute right to sell the others, retain out of the proceeds what was due from Foley, and account to him for the surplus : and the defendant, by virtue of an attachment against the goods of Foley, took the barrels out of the plaintiffs' possession, and the court rightfully held that the plaintiffs were entitled to recover the amount of their advances.

The motion for a new trial must therefore be denied.

