UNITED STATES v. TWO HUNDRED AND FORTY BUNDLES OF CIGARS.    See Case No. 15,066.

---

## Case No. 16,580.

UNITED STATES v. TWO HUNDRED AND SEVENTY-EIGHT BARRELS OF DISTILLED SPIRITS.

[3 Cliff. 261; [1] 10 Int. Rev. Rec. 164; 16 Pittsb. Leg. J. 250.]

Circuit Court, D. Massachusetts. May Term, 1869.[2]

INTERNAL REVENUE — BONDED WAREHOUSES — FRAUDULENT WITHDRAWALS — KNOWLEDGE OF AGENT — MIXTURE OF FRAUDULENT WITH INNOCENT SPIRITS — FORFEITURE — EVIDENCE OF INTENT—BILL OF EXCEPTIONS.

1. Where goods are withdrawn from a United States bonded warehouse by fraud, the permit so obtained is a mere nullity, and the person perpetrating the fraud has no more right to the possession of the merchandise than if the same had been taken by force or had been stolen by him.

2. Goods removed from a United States bonded warehouse by consent of the collector obtained by fraud are subject to forfeiture.

3. Where a person purchases goods as agent for another, knowing that the same had been removed before the taxes were paid, from a United States bonded warehouse by fraud, the principal would be bound by the knowledge of the agent.

4. The jury must find in such case that the agent was cognizant of the fraud at the time he made the purchase, else they would not be justified in finding that the principal was affected by the antecedent knowledge of the agent.

5. The only office of a bill of exceptions is to bring before the appellate court such questions as were duly raised and properly saved in the subordinate court.

6. Where spirits fraudulently withdrawn from a bonded warehouse were seized for nonpayment of the taxes thereon, after they had been mixed at a rectifying establishment with others belonging to the claimants, so that they could not be distinguished, it was held that the United States were entitled to a forfeiture of a fair proportion of the mixture, even though the mixture might have been innocently made, provided the jury were satisfied from the evidence, and under the instructions of the court, that the spirits fraudulently withdrawn would have been by law liable to forfeiture, if they had not been so mingled with others.

7. The right of the United States to a forfeiture cannot be destroyed by the intermixture of the liquors fraudulently taken from the warehouse, with others not subject to forfeiture.

8. If spirits liable to forfeiture in consequence of fraudulent removal from a United States bonded warehouse and for nonpayment of taxes, were fraudulently mixed with others by the claimants and belonging to them, in order to destroy the identity of the goods so fraudulently removed, then the entire quantity is forfeited.

9. This rule is never applied where the goods can be separated and distinguished.

10. If the claimants knew, when they made the mixture, that the spirits which they mixed with their own had been fraudulently withdrawn from the bonded warehouse, then the spirits seized would be liable to forfeiture.

11. The rule might be otherwise where the effect of the intermixture was to convert the substances into a new species, unless the new species can be reduced to its elements.

12. Wherever goods of a similar kind are innocently intermixed, so that they cannot be distinguished, and they are not substantially destroyed, as by the production of a different species, the several owners may reclaim their respective shares, and take possession of the same wherever they can find them, if they can do so without a breach of the peace, or they may bring trover for the value of their proportions, against the person in possession, after demand and notice.

13. Under the act of July 13, 1866 [14 Stat. 98], where spirits on which taxes were imposed were found in the custody of the claimants, after fraudulent removal from the warehouse, with the taxes unpaid, it must be assumed, under a finding of the jury like the one in this case, that the claimants held them for the purpose of selling and removal in fraud of the revenue.

Error to the district court of the United States for the district of Massachusetts.

Certain distilled spirits, described in the information, were seized at Boston in this district, on April 27, 1867, and the original information was filed in the district court on May 15 following. [Case unreported.] The cause of seizure, as alleged, was that the spirits in question were manufactured in the United States, and that having been so manufactured they were at the time of seizure, and had been for a long time before, subject to a tax imposed thereon, under the acts of congress relating to internal revenue; that the barrels containing the spirits were then and there found elsewhere than in a bonded warehouse, to wit, in a store and building occupied by the firm of one of the claimants, which was not a bonded warehouse; that the tax so imposed on the said distilled spirits had never been paid, and that the said distilled spirits had not then and there been removed from a bonded warehouse according to law. Subsequent to the filing of the information, the claimants [Joseph A. Boyden and John H. Harrington] appeared and severally pleaded that the goods did not, nor did any part thereof, become forfeited as alleged in the information, and that none of the allegations in the information were true. Issue was joined upon each of those pleas, and the verdict of the jury was in favor of the United States. Exceptions were taken by the claimants to the refusal of the court to instruct the jury, as requested, and also to the instructions of the court as given to the jury. Separate claims were filed by the respective

---

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

[2] [Affirmed in 11 Wall. (78 U. S.) 356.]

claimants for distinct portions of the spirits seized, and in making their defence they set up, in certain aspects of the case, very different theories, both in the pleadings and by the bill of exceptions. Prior to the seizure several hundred barrels of spirits of domestic manufacture deposited here, in the bonded warehouses of the United States, had been withdrawn upon application made in due form to the collector of the district. The application represented that the spirits were to be transported to Eastport, in the state of Maine, for exportation to a foreign market; but the several bonds given in the case, as required by law and the regulations of the department, proved to be false and fraudulent; and the bill of exceptions stated that the spirits were not so transported, nor were they intended to be transported, as represented in the application to withdraw the same, but were removed for sale and consumption in this district without the payment of the taxes.

The spirits seized in this proceeding were found in this district, as the evidence tended to show, in a building occupied by the claimants, but not a bonded warehouse, and were at the time of seizure in their possession. The theory of the United States was, that the spirits seized were a certain part of the spirits previously withdrawn from the bonded warehouses, by means of those false and fraudulent bonds, and that the claimants were parties to the conspiracy by which the same were so withdrawn without the payment of the taxes, and in fraud of the laws of congress providing for the assessment and collection of the internal revenue. The claimants denied that the spirits in controversy were any portion of the spirits so fraudulently withdrawn from the bonded warehouses, and insisted that the one hundred and twenty-four barrels embraced in the claim first filed had been put in leaches, with other lots of spirits, and mixed and rectified so that it was impossible to identify any one lot from another, as when originally put into the leaches. Several answers were made by the government to that defence. It was insisted that the spirits in question were a part of the indentical spirits so fraudulently removed from the bonded warehouses, and denied that they had ever been mixed with any other lots as alleged. That the mixing of the spirits, if done as alleged, was intentionally and fraudulently done by the claimants, with the knowledge that the same had been so withdrawn by fraud from the bonded warehouses, and for the purpose of destroying the identity of the spirits, and to defraud the United States of the tax imposed on the spirits. Harrington contended that he bought the spirits described in the claim through and by means of the other claimant. as his agent, and they both claimed that they purchased the spirits in open market, and without any knowledge that the same had been fraudulently withdrawn from the bonded warehouses; but the government insisted that the spirits were in the possession of the claimants at the time of

seizure, and that they intended to sell and remove the same, in fraud of the internal revenue laws, and with the design to evade the payment of the taxes.

Evidence was introduced, as stated in the bill of exceptions, tending to prove the facts as claimed both by the United States and the claimants, and it was admitted that the seizure was made before the expiration of the time allowed by the regulations of the department for the completion of the transportation. Forfeiture of the spirits seized was alleged, in the first count of the information, for a violation of the provisions contained in section 44 of the act of July 13, 1866, which enacts that persons who shall remove any distilled spirits from the place where they were distilled, otherwise than into bonded warehouses. as provided by law, shall be liable to a penalty or to imprisonment. and the provision is, that all distilled spirits so removed, and that all distilled spirits found elsewhere than in a bonded warehouse, not having been removed from such warehouse according to law, and the tax imposed on the same not having been paid, shall be forfeited, and may be seized and sold for the tax and expenses of seizure and sale. See 14 Stat. 163.

G. S. Hillard, U. S. Dist. Atty.
R. M. Morse, Jr., for claimants.

CLIFFORD, Circuit Justice. Merchandise, articles, or objects on which taxes are imposed by the provisions of law, found in the possession or within the control of any person. in fraud of the internal revenue laws. or with the design to avoid the payment of such taxes, may be seized as provided in section 9 of the act of July 13, 1866, and the provision is, that the same shall be forfeited on that account. 14 Stat. 111.

Founded, as the second and third counts are, upon that provision, it is quite clear that they are drawn with technical accuracy, and it is not necessary to examine the fourth and fifth counts, as they were withdrawn before verdict. See, also, 13 Stat. 240; 14 Stat. 160, 162. All necessity for any discussion in regard to facts of the case is removed by the verdict of the jury, which shows that the theory assumed by the United States is correct: that the spirits described in the information were parcel of the spirits previously withdrawn from the bonded warehouses by means of the false and fraudulent bonds, and that the claimants were parties to the conspiracy by which the same were so withdrawn without the payment of the taxes to which they were subject under the internal revenue laws. Nothing, therefore, remains to be considered but the exceptions to the rulings and instructions of the court. Examination will first be made of the exceptions taken by the claimants to the rulings of the court in refusing the prayers they presented for instructions to the jury. They requested the court to instruct the jury that the spirits, if they had been deposited in a bonded ware-

house. and had been removed therefrom upon application to the collector and by his authority, for rectification or transportation for exportation, were not liable to forfeiture. Unlimited as the language of the request is, argument is hardly necessary to show that it was properly refused, as the language is broad enough to save the spirits from forfeiture, even if found in the possession and within the control of the party who fraudulently withdrew them from the bonded warehouse.

Fraud, it is sometimes said, will vitiate anything, but the request in this case makes no distinction between a possession obtained by fraud and that acquired according to law. Strictly examined, the theory of the request is, that the spirits were not liable to forfeiture if they had been formally withdrawn (no matter by what means) from the bonded warehouse where they had been deposited; but the court is of the opinion that a permit obtained by fraud from the collector to withdraw the spirits, as respects the perpetrator of the fraud, is a mere nullity, and such a party would have no better right to the possession of the spirits than he would have had if they had been stolen by him, or than he would have had if he had taken them by force from the public warehouse.

Precisely the same objections apply to the second request for instruction to the jury, which was that if the spirits had been removed from a bonded warehouse upon application to the collector, and upon giving bonds to his acceptance and upon his permission, and were seized before the expiration of the time allowed for the rectification or transportation, then the spirits were not liable to forfeiture. Like the preceding, this request is based on the theory of law, that if the spirits passed out of the bonded warehouse by consent of the collector, no matter if his consent was procured by the grossest fraud, or even by force, the spirits are not liable to forfeiture, even in the hands of the guilty party. Such a theory cannot be adopted, and need not be further examined. Apart from the qualification appended by the court to the third request, it would need no explanation, as it was given as requested, so far as respects the first-named claimant. The substance of the request was, that if the spirits had been removed from a bonded warehouse, as supposed in the preceding request. and had been bought by the claimants of the party who withdrew the same, or his agent, without knowledge of the fact that the bonds furnished were worthless. or that the spirits were removed from the warehouse with intent to defraud the United States, then the spirits were not liable to forfeiture. Given as the request was, so far as respects the first claimant, he has no grounds of complaint. unless it be with the verdict of the jury, as will presently more fully appear. Stated in the exact words of the court, the qualification annexed to the request was that if Boyden

bought the spirits as agent for Harrington, and Boyden was cognizant of the fraud, Harrington would be so, and by his knowledge. Whether the knowledge Boyden had of the fraud was acquired before or after he was agent, to make the purchase for his principal, does not appear, but for the purpose of this investigation it must be assumed that it was before he was so employed, as the instruction, as given. is broad enough to include both theories. Authorities are not wanting where it is held that the principal is not bound by any such knowledge of his agent, unless the agent acquired the knowledge subsequent to his employment. Bank of U. S. v. Davis. 2 Hill, 460; Howard Ins. Co. v. Halsey, 8 N. Y. 274; Weisser's Adm'rs v. Denison, 6 Seld. [10 N. Y.] 77; New York Cent. Ins. Co. v. National Protection Ins. Co., 20 Barb. 476; 1 Pars. Cont. 75; 2 Lead. Cas. Eq. 164. Those authorities hold that unless notice of the facts in question come to the knowledge of the agent while he is concerned for the principal, and in the course of the very transaction in which he is employed, the principal is not affected by the knowledge of the agent; but Judge Story admits that if the knowledge was acquired by the agent so near the transaction that the agent must be presumed to recollect it, the principal is affected by that knowledge. Story, Ag. (16th Ed.) § 140. Such was the express ruling of the court in the case of Hovey v. Blanchard, 13 N. H. 145, and the reasons assigned in support of the ruling appear to be correct. Patten v. Merchants' & Farmers' Mut. Fire Ins. Co., 40 N. H. 375; Hargreaves v. Rothwell, 1 Keen, 158; Fuller v. Bennett, 2 Hare, 404; Hart v. Farmers' & Mechanics' Bank, 33 Vt. 252; 13 Am. Law Reg. 138.

Contrary decisions have been made upon the point in the courts of the past century. The court of common pleas held, in the case of Dresser v. Norwood, 108 E. C. L. 585, that the principal was not affected in the sale and purchase of merchandise with any knowledge acquired by his agent before his employment, but the case was carried to the exchequer chamber, where the judgment of the common pleas was unanimously overruled. Where the agent of the buyer purchases, on behalf of his principal, goods of the factor of the seller, the agent having present in his mind, at the time of the purchase, that the goods he is buying are not the goods of the factor, though sold in the factor's name, the knowledge of the agent, however acquired, says the court, is the knowledge of the principal. Dresser v. Norwood, 17 C. B. (N. S.) 481. By the instruction in this case, the jury were told that if the agent was cognizant of the fraud at the time of the purchase, the principal was bound by that knowledge, and I am of the opinion that the charge was correct, whether the knowledge of the agent was acquired at that time or the day before, as the requirement of the instruction was, that the jury must find that the agent was cognizant of the

fraud at the time he made the purchase, else they would not be justified in finding that the principal was affected by the antecedent knowledge of the agent. Beyond question, the jury found that the first-named claimant was in the possession of the spirits with knowledge, at the time he made the purchase for the other claimant, that they had been withdrawn by fraud from the bonded warehouses, and that the tax to which they were subject had not been paid. Suggestion is made that the evidence did not warrant the finding of the jury, but the decisive answer to that suggestion is, that the only office of a bill of exceptions is to bring before the appellate court such questions as were duly raised and properly saved in the subordinate court.

Exception was also taken to the ruling of the court in refusing to give the fourth request for instruction, which was to the effect as follows: That if the spirits, proved in the case not to have paid a tax, had passed through the rectifiers in which there were other spirits, and had in that way become mixed with them, then no portion of the spirits when rectified would be liable to forfeiture; but the court refused to give the instruction as requested, and instructed the jury to the effect following: That if the spirits seized came from the rectifiers in which the spirits so fraudulently withdrawn from the bonded warehouses were mixed with other lots belonging to the claimants so that they could not be distinguished, the United States were entitled to a forfeiture of a fair proportion of the mixture, even though the mixture might have been innocently made, provided the jury were satisfied, from the evidence under the instructions given by the court, that the spirits so fraudulently withdrawn would be by law forfeited if they had not been so mixed with other lots. That if the jury were satisfied, as aforesaid, that the spirits so fraudulently removed would have been forfeited if they had not been so mixed, and the jury also find that they were fraudulently so mixed by the claimants with knowledge that they had been so removed by fraud, and for the purpose of destroying the identity of the spirits and of defrauding the United States, then the entire quantity seized is forfeited. Extended reply to the objections taken to the ruling of the court in refusing to give the fourth request for instruction is unnecessary, as it obviously assumed that the rights of the United States were wholly lost by the intermixture, however made and by whomsoever the act was done. Such a rule cannot be adopted, as it merges all distinction between an innocent and fraudulent act, and requires the same finding by the jury, whether the mixture was occasioned by mistake or was the result of fraudulent design. Cases where the intermixture is made by mutual consent or by the act of a third person need not be considered, as it is conceded that the intermixture in this case was by the act of the claimants. and it is not pretended that the United States consented to the act. Where the intermixture was made willfully and not by mutual consent, by the rules of the civil law, he who made it acquired the whole upon the ground of conversion, but the common law adopted the opposite rule, and with more policy and justice to guard against fraud, gave the whole property, without requiring any account, to him whose property was originally invaded, and its distinct character destroyed. 2 Kent, Comm. (11th Ed.) 448; Ryder v. Hathaway, 21 Pick. 305; Hart v. Ten Eyck, 2 Johns. Ch. 62; Willard v. Rice, 11 Metc. (Mass.) 493; Wingate v. Smith, 20 Me. 289; Taylor v. Jones, 42 N. H. 25. Many exceptions, however, exist to that rule, and it is said that it is never carried further than necessity requires, and it is certain that it never applies in cases where the goods can be distinguished and separated, as in that case no change of property takes place. 3 Bl. Comm. 405; Frost v. Willard, 9 Barb. 440; Curtis v. Groat, 6 Johns. 168. Divested of immaterial matters, the case before the court presents the following facts. Distilled spirits fraudulently withdrawn from the bonded warehouses. and liable to forfeiture on that account, were mixed by the claimants with other similar spirits of their own property, and the mixture so made by the claimants was passed through the process of rectification: and the question is, whether the rectified product was subject to seizure and forfeiture. because one moiety of the mixture had been fraudulently withdrawn as aforesaid from the bonded warehouses.

Examined carefully, it will be seen that the fourth request for instruction affirms that no portion of the spirits under those circumstances would be liable to forfeiture, and as framed it admits of no exception or qualification, and therefore is plainly erroneous, as it is clear that the spirits seized would be liable to forfeiture if the claimants knew, when they made the mixture, that the spirits which they mixed with their own had been fraudulently withdrawn from the bonded warehouses, and were then and there liable to forfeiture on that account. Exceptional cases undoubtedly arise even under the rules of common law, where it is held that an undistinguishable confusion of goods with other goods of similar species works a conversion. and that the title passes to the party in possession; but the general rule is certainly the other way, unless the effect of the intermixture was not only to destroy the identity, but to convert the substance into a new species. Different rules apply where the intermixture is of goods or substances of different species, or where the effect of the intermixture is to produce something of a different species, unless the new species can be reduced to its former rude materials or elements. Pratt v. Bryant, 20 Vt. 333. Several cases decide that where the effect of the intermixture is to produce an entirely different species, then it may be held that there is a conversion. and the person whose property has been innocently taken

loses his property, but has a right of action to recover its value. Silsbury v. McCoon. 3 Comst. [3 N. Y.] 379; Davis v. Easley, 13 Ill. 192; Betts v. Lee, 5 Johns. 348; Brown v. Sax, 7 Cow. 95. Whenever goods of a similar kind are innocently intermixed, so that they cannot be distinguished, and they are not substantially destroyed, by the production of something of a different species, the several owners may reclaim their respective shares, and may take possession of the same wherever they can find it. if they can do so without a breach of the peace, or they may bring trover for the value of their respective proportions against the person in possession. after demand and notice. Ryder v. Hathaway, 21 Pick. 298; Pratt v. Bryant, 20 Vt. 333; Colwill v. Reeves, 2 Camp. 576; Bryant v. Ware. 30 Me. 295; Beach v. Schmultz, 20 Ill. 185; McDowell v. Rissell. 37 Pa. St. 165. Apply these rules to the first instruction given by the court, and it is clear that it was quite as favorable to the claimants as they had any right to expect. Rectification did not change the species of the spirits, but the effect of passing them through the rectifiers was to remove impurities, and perhaps to raise their value, and the instruction given by the court saved to the claimants the benefit of any such improvement in the spirits. The correctness of the second instruction is too obvious to require any argument in its support. Objection is also made that the ninth section of the act of July 13. 1866, affords no legal foundation for the second and third counts in the information. Taxes were imposed on these spirits by the provisions of law, and they were found in the possession and custody of the claimants, and within their control, and it must be assumed, under the finding of the jury, that the claimants held the spirits in possession, for the purpose of selling and removing them, in fraud of the internal revenue laws, and with design to avoid the payment of the taxes. and the provision is, that all such merchandise, articles, or objects may be seized by the collector. and the same shall be forfeited. U. S. v. One Still [Case No. 15,954].

Judgment affirmed.

[Affirmed by supreme court in 11 Wall. (78 U. S.) 356.]