## CHESHIRE RAILROAD CO. *v.* FOSTER.

By a mistake of the plaintiffs, a lot of hides were carried by the defendant's servants to his tannery, and there appropriated and used for his benefit. Before the conversion, the defendant had notice from the plaintiffs that the hides were claimed as the property of another person; but no proof of the ownership was produced. In an action of trover for the hides, it was *held* that this amounted to a conversion, and that the defendant was not entitled to an instruction to the effect that he was not liable unless before the conversion he had reasonably satisfactory proof that the hides were not his.

TROVER, by Cheshire Railroad Co. against Francis Foster, for sixty-six hides. Writ dated September 11, 1868. It appeared that, in the latter part of December, 1867, a lot of sixty-six hides, forwarded from Burlington, Vt., were received at the Keene station, consigned to Geo. B. Rawson. The plaintiffs' evidence tended to show, that, on January 13, 1868, the plaintiffs, erroneously supposing the Rawson hides to be consigned to the defendant, requested the defendant to remove them, and that the defendant's servants accordingly removed them to the defendant's tannery, together with other hides which were in fact consigned to the defendant. The plaintiffs admitted that, if the hides were carried to the defendant's tannery, it was in consequence of the plaintiffs' mistake. The defendant's evidence tended to show that the Rawson hides were never carried to the defendant's tannery; but that a lot of sixty-three hides, belonging to the defendant, and resembling the Rawson hides in appearance, were carried from the depot to the tannery on January 13. It was conceded that all the hides which were

carried to the defendant's tannery were converted to the defendant's use.

It appeared that about three or four weeks after January 13, the plaintiffs notified the defendant that it was claimed that sixty-six of the hides carried to the defendant's on January 13 belonged to Rawson, and that the defendant's title to that portion of the hides was disputed. It was admitted that all the hides which had been carried to the defendant's tannery on January 13 were still at the tannery when this notice was given. The defendant replied to this notice, in substance, that if there were any hides there that did not belong to him, he did not wish to retain them, and was willing they should be picked out by the railroad men and carried away. He further stated that if he had any hides answering to the description of the Rawson hides, they were in the shed. The plaintiffs' evidence tended to show that the hides carried to the defendant's on January 13 were deposited by the teamster in the beam-room. The defendant's evidence tended to show that the teamster placed them in the shed. At a time subsequent to the above notice to the defendant, the plaintiffs' station agent went to the defendant's, and made preparation to take away a lot of hides in the shed resembling the Rawson hides. The agent, after loading ten or twelve hides, found a tag on one hide labelled " F. Foster ; " he then found another hide with a similar tag : thereupon he concluded that the hides in the shed belonged to the defendant, and did not take them.

On or about April 15, the plaintiffs' superintendent had an interview with the defendant, when the defendant said he could not tell whether he had the hides or not until he took an account of stock. April 27, the plaintiffs wrote the defendant that their demand against him on account of the hides had been left with counsel for collection, requesting him to settle the same. Subsequently the plaintiffs' superintendent spoke to the defendant about the matter, and the defendant said he had taken an account of stock and it had come out about right, or, that he was a little short. The plaintiffs paid Rawson for the hides, June 2, 1868.

The defendant requested the instruction, " That the defendant is not liable unless the jury find that he converted the hides to his own use after he had reasonably satisfactory proof that the hides were not his." This instruction was not given ; but the jury were instructed, in substance, that the plaintiffs could recover if the defendant had the hides and converted them to his own use after the notice from the plaintiffs that there was a claim to the hides set up in behalf of another party, and that the defendant's title was disputed,—even though he converted them under the impression that they were his. To the refusal to instruct, and to the instruction given, the defendant excepted.

*Wheeler & Faulkner*, for the plaintiffs.

*Cushing* and *Woodward & Wellington*, for the defendant.

· LADD, J.   The verdict, under the instructions given to the jury, settles the fact that there was an actual conversion of the hides by the defendant to his own use, after notice from the plaintiffs that there was a claim to them set up in behalf of another party.   It was not necessary to show fraud or a wrongful intent on his part; and it makes no difference that, at the time of the conversion, he believed the property to be his own.   1 Ch. Pl. 154; Com. Dig.,·Action upon the Case upon Trover (D); *Hartop* v. *Hoare*, Sh. 1187; *Gilmore* v. *Newton*, 9 Allen 171; *Stanley* v. *Gaylord*, 1 Cush. 546; *Everett* v. *Coffin*, 6 Wend. 603; *Boyce* v. *Brockway*, 31 N. Y. 490; *Doty* v. *Hawkins*, 6 N. H. 247; *Hyde* v. *Noble*, 13 N. H. 494; *Lovejoy* v. *Jones*, 30 N. H. 164; *Cooper* v. *Newman*, 45 N. H. 339.   It is clear, therefore, that there was no error in the instructions excepted to, nor in the refusal to give those requested, unless the view mainly urged by the defendant's counsel in argument,—namely, that there was a commingling of the goods through the plaintiffs' mistake,—can be sustained.

The argument is, that the defendant was entitled to reasonably satisfactory proof that the hides were not his, because the Rawson hides were intermingled with his own by the plaintiffs' mistake and fault; and this, as we understand it, is put upon the ground that where one having charge of the property of another so confounds it with his own that it cannot be distinguished, he must bear all the inconvenience of the confusion.   It is to be borne in mind that the question before the court now is simply upon the instructions to the jury and the refusal to give those requested.   Assuming that the charge requested would have been proper, and that given wrong, provided there had been an intermingling or confusion of goods within the legal definition of that term, we must inquire whether the case shows such intermingling.   In the first place the parties were at issue, and the evidence was conflicting as to whether the Rawson hides were ever carried to the defendant's tannery at all.   The verdict, doubtless, settles that they were in fact carried there, but it by no means settles that the other lot of sixty-three hides were also carried there the same day.   Assuming, however, that the two lots were carried together, how does that show that they were intermingled?   No facts as to the condition of the hides, or the mode of conveying them, are shown.   It does not appear whether they were marked so as to be capable of indentification, nor whether they were carried on the same vehicle at the same time, or landed together in the same place.   Both parties seem to have claimed that but one lot of hides were carried, one contending that they were the Rawson hides, and the other that they were another lot resembling the Rawson hides; and it was in dispute whether, if the Rawson hides were carried at all, they were finally placed in the beam-room or in the shed.   Whether the · defendant had any other hides in either of those places with which they might have been there intermixed, does not appear except by inference.   From what is stated in the case, we are unable to see that there was a confusion of goods.

It is sufficiently evident that the great controversy at the trial was,

whether the defendant had had or used the Rawson hides at all; and there is nothing to show that the point now taken as to a confusion of goods by the plaintiffs' mistake or fault was insisted on or even raised before the verdict. It is said that there was evidence from which the jury might have found such commingling, and that therefore the instructions requested ought to have been given. Undoubtedly there was evidence tending, more or less directly, to show that fact; and if, upon the evidence, the question had been distinctly raised, it probably would have been submitted to the jury with proper instructions for them to find the fact. But the difficulty in sustaining the request upon the ground of the defendant's present contention is, that it assumes this very fact, which was not admitted, and, so far as we can see, appears not to have been tried.

Had this point been taken at the trial, and had the request been in such form as to submit the question of commingling to the jury ; that is, had it been put hypothetically,—" if the jury find that the hides were commingled by reason of the plaintiffs' mistake, the defendant would not be liable unless he converted them after he had reasonably satisfactory proof that they were not his,"—then the question that has been argued would have been fairly raised. As it is, however, the ingenious argument of the defendant's counsel, when examined, comes to this : there was evidence from which the jury might have found a commingling by reason of the plaintiffs' mistake ; therefore instructions ought to have been given, which, in any view, could only be proper in case such commingling were established.

The fallacy is quite obvious, and need not be dwelt upon. In the above remarks we have not, of course, considered whether such a commodity as hides is capable of confusion in a legal sense.

It is to be observed that the case only shows that the hides were carried to the defendant's tannery by reason of the plaintiffs' *mistake.* Even if they were there mingled with others as a further consequence of the mistake, it does not appear that the plaintiffs were guilty of any fraud or wrong in the matter, but only of an innocent mistake ; and it certainly admits of doubt whether, under such circumstances, the defendant could be allowed to appropriate the property and go free of liability to pay for it, especially after he had notice of a claim in behalf of another party, simply because he was not furnished with reasonably satisfactory proof that it was not his. *Pratt* v. *Bryant,* 20 Vt. 333.

With these views, it is unnecessary to inquire whether the defendant should be held to have waived the point now insisted on. See *Moore* v. *Ross,* 11 N. H. 547 ; *Kent* v. *Tyson,* 20 N. H. 121 ; *Hooksett* v. *Amoskeag Co.,* 44 N. H. 105 ; *Conway** v. *Jefferson,* 46 N. H. 521 ; *Moore* v. *Bowman,* 47 N. H., at p. 500.

*Judgment on the verdict.*

---

* "*Conway* v. *Jefferson*" should be *Connery* v. *Jefferson.* REPORTER.