JAMES S. BEACH *et al.,* Plaintiffs in Error, *v.* JOSEPH SCHMULTZ, Defendant in Error.

ERROR TO COOK.

A party may take a second deposition from a witness, without leave for that purpose; but it is discretionary with the court to say, which shall be read.

Where a writ is in the hands of and executed by a coroner, it will be presumed there was no sheriff, and that an elisor was properly appointed by the clerk, to serve a writ of replevin upon the coroner.

A party who has wrongfully produced a confusion of goods, consisting of a cargo " of plank, boards and scantling," by an unauthorized intermixture, forfeits his right to the whole, and his creditors cannot levy an attachment upon such cargo.

THIS was an action of replevin for a cargo of lumber, (one hundred thousand feet, more or less), brought by the defendant in error against the plaintiffs in error, on the 3rd day of October, A. D. 1856, returnable to the October term, A. D. 1856, of the Cook Circuit Court.

The affidavit on which the writ issued was made by the defendant, and filed in the court below on the 3rd day of October, 1856, and sets out in substance, that said Schmultz was the owner of a cargo of pine lumber, which was shipped from Green Bay to Chicago, on the schooner "*Main*," to said Schmultz, and that he is justly entitled to possession of said lumber, and that James S. Beach, as acting sheriff of Cook county, and in his capacity as sheriff, and A. M. Crawford, on the 2nd day of 1856, wrongfully took possession of said lumber, and wrongfully detain the same, etc.

Thereupon a writ of replevin issued out of said court, directed to one J. O. Wilson, as an elisor appointed by the clerk of said court to execute said writ, who executed the same by replevying said lumber and summoning said plaintiffs.

The defendant filed his declaration in the cepit, complaining that said plaintiffs on the 2nd day of October, 1856, took a cargo of lumber which was shipped from Green Bay to the port of Chicago, to said defendant, on the schooner Main, of the value, etc., and wrongfully detain the same, etc.

Plaintiffs filed their motion to dismiss said suit, and for return of property, because of defect of *affidavit*, etc.

Defendant filed cross-motion to amend bond.

Court overruled plaintiffs' motion to dismiss, and sustained defendant's cross-motion to amend his bond.

The following pleas were filed:

First, non-cepit; second, property in Oscar Gray; third, property in plaintiff Crawford; fourth, property in Gray, Densmore & Phelps; fifth, plaintiff Crawford pleads special property in himself for demurrage; sixth, plaintiff Beach pleads specially that by virtue of writ of attachment against the goods, etc., of Oscar Gray, he seized the property in question as the property, and the same was the property of Oscar Gray.

Defendant took issue to the country on the foregoing pleas:

April 21st, 1857, plaintiffs moved to suppress the deposition of Oscar Gray, filed April 4th, 1857; first, because said deposition was retaken without leave of court; second, because the interrogatories and the testimony of said witness were illegal and incompetent, etc., which motion was overruled by the court, and the plaintiffs then and there excepted.

October 17th, 1857, the cause was submitted to the court, MANNIERE, Judge, for trial, without the intervention of a jury. And at the January special term, A. D. 1858, of court, the court found the issues for the defendant, and assessed his damages at one cent. The plaintiffs thereupon entered their motion for a new trial, for the reason that the finding of the court is against the law and evidence, which motion is overruled by the court, and the plaintiffs excepted.

And judgment was thereupon entered upon the said finding of the court.

The following is the substance of the bill of exceptions taken on the trial of this cause in the court below, viz.:

The defendant offered in evidence the two depositions of Oscar Gray, taken by him and filed on 28th February, 1857, the other filed 14th of April, 1857, to the introduction of which and to each respectively the plaintiffs objected, but the objection was overruled by the court, and the plaintiffs then and there excepted, and the depositions were read in evidence. In the first deposition taken, the witness, Oscar Gray, states in answer to the first interrogatory, that he acted as agent for Schmultz during the summer and fall of 1856, in manufacturing and shipping lumber to him. That he shipped from Green Bay about 75 to 100 M. feet of lumber on the schooner Main, to Milwaukee, on or about the 29th of September, 1856, and that it arrived at Milwaukee, but the captain of the schooner, without unloading, went, as witness was informed, to Chicago, but where the lumber was finally unloaded, witness knows not. That he owned part of said lumber, and Schmultz a part, but he is unable to state the parts belonging to each severally; he and Schmultz were the sole owners of the cargo. That he had instructions from Schmultz, as his agent, to ship his lumber to him at Chicago. He shipped said lumber partly by his own authority, and by the general powers he held under Schmultz as his agent; cannot say whether said lumber was mixed or not. The said lumber belonged to Schmultz and myself *severally*. The said lumber was made from logs owned by Schmultz, myself and Pierce, Talbott & Co. That *his means* of knowledge as to the ownership of said lumber, are derived from *having myself purchased the logs with money belonging* to the *said Schmultz and myself*, and getting the lumber manufactured from said logs. Believes the said lumber was taken to Milwaukee by his direction; part of said lumber belonged to Schmultz, whose agent I was.

He also states, that he directed the said captain to take said lumber to Milwaukee, and that he would meet him there. Witness says he was short of lumber at that time to load said

schooner, and borrowed lumber to complete the cargo of Pierce, Talbott & Co. Witness states that he carried on said saw mills as his own, purchasing and selling lumber in his own name, and never used the name of Schmultz in his business; have known Schmultz five or six years, and he is engaged in the clothing business in Chicago.

In the second deposition, the said witness, Oscar Gray, states in answer, after preliminary interrogatories, that he was agent for Schmultz during summer and fall of 1846, and only for the purpose of manufacturing and shipping of lumber at Green Bay. That he was, as Schmultz's agent, to have sawed and shipped about 600 M. feet of lumber. He cannot tell how many feet of logs Schmultz had to saw when he commenced acting as his *agent*, nor does he know what portion he had sawed, but thinks he shipped to Schmultz about three or four hundred M. feet. That he shipped a cargo of lumber, about seventy-five to one hundred M. feet of lumber, consisting of plank, boards and scantling and shingles, but cannot tell how much of each, on the 29th of September, 1856, on the schooner Main. I was the owner of the shingles, and Schmultz and myself were the owners of the balance of the lumber. Schmultz and myself owned said cargo separately, Schmultz owned probably one-half of said cargo, and I the other half; it consisted of plank, boards, joists and scantling. I can't tell the number of feet belonging to each of us. That he understood, and such were his instructions, if he he had any from Schmultz, to ship his lumber to him at Chicago. No person could have identified Schmultz's lumber from his on the vessel; said lumber was taken to Milwaukee by his direction, without authority from Schmultz; he understood from Crawford that said lumber was taken to Chicago. That Gray, Densmore & Phelps, and Michael Doyle, were the owners of the schooner Main—witness has an impression that Crawford knew Schmultz was the owner of the cargo, and thinks Crawford notified Schmultz of the arrival of the cargo, but he is not positive, and knows nothing about the time. He had, prior to the 29th Sept., 1856, shipped lumber on the schooner Main, Capt. Crawford, to Schmultz, at Chicago. Also, that he made out no shipping bill at Green Bay, but made out in Chicago, and delivered it with other papers to B. W. Thomas, consigning the lumber to Schmultz, and requested him to deliver the bill to Crawford on the arrival of the schooner. This occured about the 4th or 5th of October, 1856. Witness also left with bill of lading, an order, bill of sale, etc., referred to in exhibits; the order left was not for sawing that cargo, but on general account for sawing. That the reason why he made out the bill of lading consigning the lumber to Schmultz, was because I wished him

to have the lumber, intending to make myself good from his logs. I settled my account as agent with Schmultz, about the close of navigation in the fall of 1856. There was nothing specifically mentioned about this lumber nor any other, it was a sort of jumping accounts, so that all and every account with Schmultz was included. In this settlement there was a balance found due Schmultz; I gave him, Schmultz, a stipulated amount, I think $450, in full settlement for his interest in any and all logs, and lumber of which I had charge of as his agent, shipments inclusive, more or less. That he don't know that he specified in whose name he borrowed lumber to complete cargo. He does not recollect whether he borrowed said lumber in his own name or as agent, and he does not recollect from whose lumber it was repaid. He knows that said lumber was made from his and Schmutlz's logs. He thinks he never used Schmultz's name except in connection with his agency.

The following errors are assigned:

1st. The court below erred in overruling plaintiffs' motion to dismiss said suit.

2nd. The court below erred in overruling motion to suppress Oscar Gray's deposition.

3rd. The court below erred in admitting in evidence the depositions of Oscar Gray.

4th. The court below erred in admitting in evidence the order and shipping bill of Oscar Gray, the receipt of Crawford, and the demand upon, and refusal of Beach to deliver said lumber.

5th. The court below erred in finding the issues for the defendant, and entering judgment thereon.

6th. The court below erred in overruling motion for a new trial.

7th. The finding of the court below was against the evidence and law of the case.

C. B. Hosmer, for Plaintiffs in Error.

J. J. McGilvra, for Defendant in Error.

Breese, J. Several questions are presented by this case, and the first is as to the affidavit made by Schmultz, the plaintiff below, on which to obtain a writ of replevin. It is in substance as the statute requires—it sufficiently describes the property, and has all the necessary averments.

The objections to the deposition of Oscar Gray are not tenable either as to his first or second deposition.

It is not true that a party has to apply for leave to the court

to retake a deposition. The statute does not require it, nor is such the practice. A *dedimus potestatem* issues by the clerk, without any application to the court, and a party might, if he chose to incur the expense, indulge a passion for taking the deposition of the same person more than twice, but the court would take care as to which, and how many, should be read. It is purely discretionary with the court, and is like recalling a witness, which the court may or not allow.

As to the appointment of an elisor by the clerk, to serve the writ of replevin, there can be no objection to that, as it is to be presumed there was no officer competent to serve it, the case showing that the writ of attachment on the cargo of lumber was in the hands of, and executed by, the coroner of the county, which could not legally be if there was a sheriff competent to act. We will intend the *casus* had arisen rendering it necessary, for the purposes of immediate justice, that an elisor should be appointed by the clerk.

The question of real moment in the case brings up the doctrine of confusion of goods, so far as the principal cargo is concerned, which the proof shows consisted of different kinds and qualities of lumber, of different grades—" of plank, boards and scantling," and some shingles. As to the lumber, Gray swears that he owned one-half, and Schmultz the other half of the cargo, separately, and were so mixed together as that the several parts were incapable of identification. Besides this, some lumber was borrowed of others to make up the cargo, and the vessel ordered to Milwaukee, against the directions of Schmultz, that she should deliver her cargo at Chicago. There are circumstances in the case tending to show an intention, on the part of Gray, to dispose of the cargo at Milwaukee, and thus defraud Schmultz ; and for this bad purpose, the several portions belonging to Schmultz and Gray, and that borrowed, were mixed up, without the knowledge or consent of Schmultz, so as to deprive him of his share, as it would appear.

The doctrine on this subject is thus stated by Blackstone, at page 405, vol. 2, of his Commentaries. After treating of title to goods by accession, he says : " But in the case of confusion of goods, where those of two persons are so intermixed that the several portions can be no longer distinguished, the English law partly agrees with and partly differs from the civil. If the intermixture be by consent, I apprehend that, in both laws, the proprietors have an interest in common, in proportion to their respective shares. But if one willfully intermixes his money, corn or hay with that of another man, without his approbation or knowledge, or casts gold, in like manner, into another's melting pot or crucible, the civil law, though it gives the sole

property of the whole to him who has interfered in the mixture, yet allows a satisfaction to the other for what he has so improvidently lost. But our law, to guard against fraud, gives the entire property, without any account, to him whose original dominion is invaded, and endeavored to be rendered uncertain, without his own consent."

This doctrine, as thus laid down, is not disputed any where in courts where the common law is the rule of decision.

Gray, then, having wrongfully produced this confusion, by an unauthorized intermixture, necessarily forfeits his right to the whole, and the plaintiffs in error, his creditors, can have no right or claim to levy an attachment upon it. The court could do no otherwise than to find for Schmultz, the defendant in error, that it was his property.

The case shows that shingles were a part of the cargo, and were Gray's separate property, and as they can be readily distinguished and separated, and as they belonged to Gray when shipped, it is contended they are yet his, and subject to the attachment. It is a sufficient answer to this to say, that the facts show the whole cargo was consigned to Schmultz, and that he paid the freight on it. He, as consignee, had, therefore, a right to the possession of the shingles.

The merits of the case are wholly with the defendant in error, and the judgment of the Circuit Court is affirmed.

*Judgment affirmed.*