## Louis W. Reiss

*v.*

## Seth F. Hanchett.

*Filed at Ottawa May 12, 1892.*

1. ESTOPPEL—*by conduct—knowledge of facts essential.* It is an essential element of an estoppel by conduct, that the representation or concealment of material facts must have been with a knowledge of such facts.

2. LEVY OF EXECUTION—*fraudulent transfer by debtor—mixture of goods—notice—estoppel—trust.* A party to a scheme to defraud creditors, who purchases goods and takes them into his possession, occupies the position of trustee for the benefit of the defrauded creditors; and if he voluntarily mingles his own goods with the trust goods, it will be his duty, primarily, at least, to inform the officer seeking to levy attachments against his fraudulent vendor, that he has made additions to the stock of goods of his own derived from another source. If he fails to make known the fact that he has other goods mixed with those he claims under his fraudulent purchase, which he and his employes can identify, and permits the officer to levy his writs upon all the goods, in ignorance of the facts, the party so claiming the goods will be estopped by his conduct from afterward asserting that a part of the goods levied upon was not subject to the levy.

3. A party who stands by and allows his property to be levied upon as the property of another, and makes no disclosure of his ownership, will by his silence be estopped from afterward asserting ownership. In such case, as to third persons, in order to prevent injustice, the law of estoppel *in pais* will be applied.

4. In this case, S. & M., an insolvent firm, made a sale of a stock of goods to G. & Co., which proved to have been made with intent to defraud the creditors of the vendors. Some little time after, G. & Co. bought and paid for fifty-eight bales of silk goods of F. & Co., and placed the same with the goods obtained from S. & M., whose creditors sued out writs of attachment to be levied on the stock first bought as the goods of S. & M. The sheriff, under the writs, levied on all the goods, including those bought from F. & Co., in the presence of the members of the firm of G. & Co., but intended to levy only on the S. & M. stock. G. & Co. replevied the goods. On the trial the court instructed the jury: "Even though the jury shall believe, from the evidence, that part of the goods seized by the sheriff and in controversy in this suit, were bought by G. & Co. from F. & Co. after the purchase of the S. & M.

stock, yet if the jury further believe, from the evidence, that G. and R. were present when such levy was made, and knew that the sheriff intended to levy on the goods which composed the S. & M. stock, and that G. and R. knew that the goods levied upon were those bought from F. & Co., and permitted said sheriff to make such levy under the supposition that said goods were the S. & M. stock, and that they did not then tell the sheriff that such goods had been by them purchased from F. & Co. and were not a part of the S. & M. stock, then the jury are instructed that they are estopped to claim said goods so levied on were not the S. & M. stock :" *Held,* that there was no error in the instruction.

5. SAME—*fraudulent mixture of goods—whether the question arises.* Where a party purchased a lot of silks under a contract in fraud of the vendor's creditors, and afterward bought other silks and intentionally mingled them with the fraudulently purchased stock, and thereby rendered the identification of such stock difficult, and concealed from the creditors for whose debts such stock was liable, and from the officer armed with process in their favor, the fact of such mingling, and thereby misled them, and suffered such officer to levy on the subsequently purchased stock without informing him of the fact that such stock was not liable to seizure under the writs in his hands, it was *held,* that these facts were sufficient to justify the court, on the trial of an action of replevin by the purchaser, to submit, by instruction to the jury, the question whether there was a fraudulent mixture of the goods.

6. APPEAL—*reviewing the facts—for what purpose.* In cases where the judgment of affirmance of the Appellate Court conclusively settles all controverted questions of fact, this court may still examine the evidence so far as to determine whether its tendency is such as to present a fair question of fact for the consideration of the jury, to which mooted points of law, embodied in or omitted from the instructions, are applicable.

APPEAL from the Appellate Court for the First District ;— heard in that court on appeal from the Circuit Court of Cook county ; the Hon. RICHARD S. TUTHILL, Judge, presiding.

Messrs. QUIGG & BENTLEY, for the appellant :

Even if the sale be considered fraudulent, the verdict can not be sustained as to the fifty-eight pieces of silk. As to these, the verdict is based on one or both of the following grounds : First, that appellants fraudulently confused the fifty-eight pieces with the stock bought from Strouse & Mayer,

and in this way lost their title to these silks; or second, that appellants are, by their conduct at the time these fifty-eight pieces were taken under the attachment writs, estopped to say that these silks were not a part of the Strouse & Mayer stock.

There was no confusion or fraudulent confusion. *Treat* v. *Barber*, 7 Conn. 274.

There can be no estoppel by silence, except when there is a duty to speak. Even if appellants knew that the writ under which the fifty-eight pieces were seized ran against Strouse & Mayer only, and also knew that the sheriff was taking, under the writ, goods which had never belonged to the Strouse & Mayer stock, still appellants were under no duty to give to the sheriff the benefit of their knowledge, because, in the first place, the sheriff stood in a hostile attitude to appellants, who were not bound to assist their enemy to their own injury,— certainly not in the absence of any request from him; and because, in the second place, appellants did not know, and could not have known, that the sheriff intended to seize only goods which had belonged to Strouse & Mayer.

The following authorities are in support of the proposition that the doctrine of estoppel has no application to the facts of this case: Freeman on Executions, sec. 275; Drake on Attachments, sec. 199; *Lothrop* v. *Arnold*, 25 Me. 136; *Treat* v. *Barber*, 7 Conn. 274; *Smith* v. *Sanborn*, 6 Gray, 134; *Carlton* v. *Davis*, 8 Allen, 94.

The evidence utterly fails to show the facts essential to raise an estoppel against appellants. The essential elements of estoppel are stated in Bigelow on Estoppel, 480.

Strict proof is required to raise an estoppel. *Keith* v. *Lynch*, 19 Ill. App. 574.

There is no evidence tending to show knowledge on the part of appellants that the sheriff was seizing goods not bought from Strouse & Mayer when he levied on the fifty-eight pieces.

Messrs. REMY & MANN, and Messrs. BRANDT & HOFFMAN, for the appellee:

As to the law relating to fraudulent confusion of goods, see *Diversey* v. *Johnson,* 93 Ill. 569; *Hart* v. *Ten Eyck,* 2 Johns. Ch. 108; *Lupton* v. *White,* 15 Ves. Jr. 434; *White* v. *Lady Lincoln,* 8 id. 364; *Brackenridge* v. *Holland,* 3 Blackf. 377; 1 Story's Eq. Jur. sec. 468; 2 Blackstone's Com. 405.

By suffering the sheriff to levy on a different stock of goods than intended, and by failing to disclose their rights, appellants are estopped from claiming that the goods taken were not subject to levy. *Brooks* v. *Record,* 47 Ill. 30; *Colwell* v. *Brower,* 75 id. 516; *Hefner* v. *Vandolah,* 57 id. 520; *Leeper* v. *Hersman,* 58 id. 218; *Pickard* v. *Sears,* 6 Ad. & E. 469; Herman on Estoppel, sec. 776.

Mr. JUSTICE BAKER delivered the opinion of the Court:

In this action Louis W. Reiss, the appellant, and one John W. Goetz, composing the firm of John W. Goetz & Co., replevied from Seth F. Hanchett, the appellee, certain silks and other goods. Appellee was then sheriff of Cook county, and had levied upon said property a number of writs of attachment issued against Henry L. Strouse and Samuel Mayer, firm of Strouse & Mayer. The levies had been made on January 5, 1884, and on the 31st day of December preceding that date Strouse & Mayer had sold a stock of goods located in the premises known as "City of Paris Store," at Nos. 100 and 102 State street, Chicago, to the firm of which appellant was a member. The claim of the creditors and plaintiffs in the attachment suits was, that Strouse & Mayer were insolvent at the time of the sale, and made the same with the intent of delaying, hindering and defrauding their creditors, and that said Reiss and said Goetz either had actual knowledge of such insolvency and fraudulent intent, or had knowledge of facts and circumstances which, in contemplation of law, amounted

to notice and was equivalent to actual knowledge. The matters of such insolvency, fraudulent intent of Strouse & Mayer, and knowledge and notice, were involved in the issues of the case at bar, and were conclusively settled in favor of appellee, as representative of the creditors, by the verdict and judgment in the circuit court and the affirmance thereof in the Appellate Court,—and more especially so, since the instructions of the court upon which those matters were submitted to the jury are not here called in question.

The material inquiry before us is in regard to fifty-eight pieces of silk, which were a part of the property levied on. Senny Cohen and Alexander Cowen both testified that said silks were bought by John W. Goetz & Co. from Marshall Field & Co. between the day of the purchase from Strouse & Mayer and the date of the levy, and, moreover, it was stipulated at the trial that the goods mentioned in the testimony of Senny Cohen as the Marshall Field & Co. goods were not part of the stock purchased on December 31 by Goetz & Co. from Strouse & Mayer, but were bought by Goetz & Co. after that date. The judgments of the courts below were in favor of appellee in respect to said silks, as well as in respect to all other matters. With reference to the Marshall Field & Co. silks in question the court instructed the jury as follows :

"Even though the jury shall believe, from the evidence, that part of the goods seized by the sheriff and in controversy in this suit were bought by Goetz & Co. from Marshall Field & Co. after the purchase of the Strouse & Mayer stock, yet if the jury further believe, from the evidence, that Goetz and Reiss were present when such levy was made, and knew that the sheriff intended to levy on the goods which composed the Strouse & Mayer stock, and that Goetz and Reiss knew that the goods levied upon were those bought from Field & Co., and permitted said sheriff to make said levy under the supposition that said goods were the Strouse & Mayer stock, and that they did not then tell the sheriff that such goods had

been by them purchased from Marshall Field & Co. and were not a part of the Strouse & Mayer stock, then the jury are instructed that they are estopped to claim said goods so levied on were not the Strouse & Mayer stock."

Said instruction is called in question on the ground that it was not authorized by the evidence.

We recognize the claim that in this sort of case we may examine the evidence so far as to determine whether its tendency is such as to present a fair question of fact for the consideration of the jury, to which mooted points of law, embodied in or omitted from instructions, are applicable. (*Bank of Montreal* v. *Page*, 98 Ill. 109.) One contention is, that it is an essential element of an estoppel by conduct that the representation or concealment of material facts must have been with knowledge of such facts, and that the evidence did not present a fair question of fact upon the point "that Goetz and Reiss knew that the goods levied upon were those bought from Field & Co." We have no doubt of the correctness of the legal principle involved, but can not concede the correctness of the claim in respect to the evidence. The identity of the Marshall Field & Co. silks was positively testified to by two employes of Goetz & Co. There was testimony tending to prove that they were in whole pieces, and in that way distinguishable from the Strouse & Mayer silks; that they were kept wrapped up in the original papers in which they came to the store; that they were not the same class of silks, but a different kind from those that were in the store before, and that they were a different make, and had the manufacturer's numbers on them, and the implication from the admission made by Goetz to Remy is, that he and others could distinguish them by the tabs. Goetz himself had bought said silks, and within a very few days, and both he and Reiss were present when the levy was made and said silks taken from the shelves and placed together on one side; and they were not removed from the store, but left in the custody of an employe

of Goetz & Co., and a day or two thereafter replevied by the latter. This evidence, and especially so in the absence of denial of knowledge by them, strongly tends to prove that they knew the Marshall Field & Co. silks, and knew that the silks attached were silks that they had bought from said Field & Co. We think this objection is not well taken.

It is urged that the evidence does not tend to prove that Goetz and Reiss knew that the sheriff was making a mistake, —that he intended to levy only on goods that had been delivered to them by Strouse & Mayer. The argument is, that they might well have believed that the attaching creditors of Strouse & Mayer claimed that the business, though carried on in the name of Goetz & Co., was really still the business of Strouse & Mayer, and the Field & Co. silks therefore liable for the indebtedness due such creditors. It is an undisputed fact of the case that both Strouse & Mayer and Goetz and Reiss understood and intended the sale of the stock that was made, to be an absolute sale. The latter took advantage of the dilemma in which the former were placed, and drove a hard bargain with them, and in the transaction the element of an intended secret trust for the benefit of Strouse & Mayer in the business thereafter to be carried on, did not, as a matter of fact, enter as a factor. Goetz and Reiss well knew all these facts. There is nothing in the testimony tending to show that they supposed that the creditors of Strouse & Mayer were by their attachment writs seeking to establish as true a condition of affairs that did not in fact exist. The natural and reasonable conclusion from all the surrounding circumstances is, that they understood that said creditors, by their writs, were making an attack upon the fraudulent sale that was actually made, and that they, Goetz & Co., knew had been made, and that they consequently were fully advised that the sheriff intended to levy only on goods purchased from Strouse & Mayer, and was making a mistake.

The remaining objection made to the instruction is now to be considered, and perhaps we can best do this by first stating, and as strongly for appellant as warranted, the relative positions in which Goetz & Co. and the sheriff stood, in respect to each other, at the time of the levy. The former had bought the Strouse & Mayer stock, and had paid a valuable consideration for it, and were claiming it as owners. The sheriff was the agent and representative of the creditors of Strouse & Mayer, and as such was seeking to deprive them of the property so claimed. Goetz & Co., therefore, and the sheriff, stood at arms length, and neither had a right to expect of the other more than fair dealing, but each had a right to demand that. It is not within the hypothesis of the instruction that Goetz & Co. said anything or did anything to induce the sheriff to levy on the silks in question, or that the sheriff requested them to designate the goods purchased from Strouse & Mayer, or inquired of them whether there were goods in the store other than those so purchased.

It is insisted by appellant, that since the sheriff was hostile to Goetz & Co., the doctrine of estoppel has no application to the case, because no duty was imposed upon said Goetz & Co., voluntarily and unasked, to actively interfere in favor of their adversary and to their own detriment. Goetz & Co. had participated in a fraud whereby the goods of Strouse & Mayer had been transferred to them, and they thereby became trustees of the property for the benefit of the creditors of the vendors. They well knew the facts out of which such fiduciary relation arose, and they are conclusively presumed to have known the law. It is of small moment that they claimed, in their own right, both the legal title and the beneficial interest in the property, for the law would not permit them thus to repudiate the trust capacity in which they held such property. They, then, intentionally and wrongfully mixed goods of their own with such trust goods, and the result was reached that while they and their servants were able to distinguish the one from

the other, yet the creditors and their agent, the sheriff, were wholly unable to make such distinction, and had no notice even that goods additional to the stock bought from Strouse & Mayer had been procured. It was, of course, the duty of the officer to exercise ordinary and reasonable care in making a levy of his writs. But after the sale of the stock of goods it remained where it had been prior to such sale. The sale had taken place only five days before. It was a dull season of the year. The silks in controversy were piled on the shelves and counters, and constituted a part of the silk stock of the establishment. Intermediate the sale and these levies the sheriff had levied other writs of attachment on portions of said silk stock, at the request of Goetz & Co., and so as to interfere as little as possible with their business. The subjects of such former levies, as well as of these levies, were not removed from the premises, but left in the store and in the custody of one of the employes of the firm, and with the understanding they would shortly be replevied, and nothing whatever had transpired that would suggest to the officer that other silks had been bought and mingled with the stock theretofore on hand. Under all the circumstances, we are not inclined to hold that it was the duty of appellee to make inquiries for the purpose of ascertaining whether there had been subsequent purchases of silk, rather than the duty of Goetz & Co. to notify him of such purchases.

It would seem, since appellant and his partner in trade stood in the shoes of trustees, and had voluntarily mingled their goods with the trust goods, that under the circumstances above stated, the duty devolved upon them, primarily, to at least inform the officer that they had made additions to the stock of silks, otherwise their conduct would be a trap to catch the creditors they had assisted in defrauding. Notwithstanding their claim of adverse title they should not, under the circumstances of this case, be permitted to occupy a better footing than that occupied by other third persons to a legal

process who stand by and allow their property to be levied on as the property of another, and make no disclosure of such ownership, and their silence induces the act of which complaint is made. As to such third persons, in order to prevent injustice, the law of estoppel *in pais* applies. *Brooks* v. *Record*, 47 Ill. 30; *Leeper* v. *Hersman*, 58 id. 218; *Colwell* v. *Brower*, 75 id. 516; *Pickard* v. *Sears*, 6 Ad. & E. 469.

Much stress is laid by appellant upon *Smith* v. *Sanborn*, 6 Gray, 134. That case was quite like this in many of its circumstances. It was there said: "It did not necessarily devolve upon the plaintiff to give, in the first instance, and before any request was made to him to do so, information concerning the title under which he professed to own the different portions of the furniture then being in his store." The reason, however, for such holding was stated by the court, and it was this: "For he could not know but that the creditors of Hayden intended to insist not only that the sale which he had made was fraudulent, but that the whole business was secretly carried on for his benefit, and therefore that all the property of which the stock consisted belonged to Hayden, and was liable to attachment for his debts." It is immaterial to inquire whether this was a good and sufficient reason for the decision there rendered. Suffice it to say that said reason is not applicable to this case, for, as we have already said, the natural and reasonable conclusion from the evidence in this case is, that Goetz and Reiss well knew that the sheriff intended to levy only on goods purchased from Strouse & Mayer, and was making a mistake.

It follows from what we have said, that we do not think that the instruction we have been discussing is erroneous.

. The court also gave this instruction in regard to the Marshall Field & Co. silks:

"Even though the jury may believe, from the evidence, that Goetz & Co. purchased some silks from Field & Co., yet if the jury further believe, from the evidence, that Goetz & Co.

fraudulently mixed such silks with a much larger quantity of silks bought by them from Strouse & Mayer, so that they could not be distinguished from each other, (if the jury believe, from the evidence, they could not be so distinguished,) and that the deputy sheriff, Burke, levied on said silks in the presence of the plaintiffs, Goetz and Reiss, as the property purchased by Goetz and Reiss from Strouse & Mayer, (if the jury so believe from the evidence,) and that the plaintiffs knew said fact and did not attempt to distinguish the Field goods from the others, nor notify the deputy sheriff that any of the same were purchased from Field & Co., but permitted him to take the same supposing they were the goods purchased by the plaintiffs from Strouse & Mayer, then the jury are instructed that they should, in their verdict, treat said goods purchased from Field & Co. the same as if they were a part of the goods purchased by the plaintiffs from Strouse & Mayer."

The point is made that there was no evidence in the record upon which to predicate an instruction in regard to a fraudulent mixture of silks. The sale of the stock of goods was fraudulent, and appellant and Goetz were parties to that fraud, and they afterwards bought other goods and intentionally mingled them with the fraudulently purchased stock, and thereby rendered the identification of such stock difficult, and concealed from the creditors for whose debts said stock was liable, and from the officer armed with process in their favor, the fact of such mingling, and thereby misled them. We think that evidence of these facts formed a sufficient basis for that part of the instruction so challenged.

It is urged that there was no evidence to justify an instruction upon the doctrine of a confusion of goods. We think that this claim is well made. That doctrine only applies when there is such an unauthorized intermixture as prevents the line of distinction from being traced, and the rule is carried no further than necessity requires. (*Beach* v. *Schmultz*, 20 Ill. 185; *Diversey* v. *Johnson*, 93 id. 569; 2 Kent's Com.

*365; *Smith* v. *Sanborn, supra.*)   Here, the evidence shows that although the sheriff and other uninformed persons were unable to separate the Field & Co. silks from the Strouse & Mayer silks, yet Goetz & Co. and some of their employes were able to distinguish the one from the other.   However, the only effect of the misdirection of the court was to cast upon appellee a greater burden of proof than the law imposed upon him, for, excluding any theory of a confusion of goods, and even any theory of a fraudulent mixture of silks, yet the hypothesis of the instruction required the jury to find, from the evidence, all the essential facts necessary to constitute a valid defense by way of estoppel by conduct.

We think there is no manifest error in the record, that substantial justice has been done in the case, and that the judgment should be affirmed, and it is so ordered.

*Judgment affirmed.*