### Vincent D. Wyman v. Victor Friedman.

#### Gen. No. 12,140.

1. REDEMPTION—*who entitled to.* A judgment creditor of a mortgagor has a right of redemption, notwithstanding such mortgagor had voluntarily conveyed all his interest in the property in question prior to the commencement of the foreclosure proceeding.

2. ESTOPPEL—*when does not arise.* The doctrine of estoppel cannot be invoked as against one who has not practiced upon another a positive fraud and who has not occupied toward such other a fiduciary relation or possessed greater means of knowledge than any other.

3. PROMISSORY NOTE—*when not merged in decree.* The finding in a decree of foreclosure of the amount due on a promissory note other than that secured by the mortgage foreclosed, does not merge the same in such decree.

Injunctional proceeding. Interlocutory appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1904. Reversed. Opinion filed April 5, 1905. Rehearing denied May 5, 1905.

**Statement by the Court.** This is an appeal from an order entered by the Circuit Court of Cook County on August 23, 1904, enjoining appellant and Thomas E. Barrett, sheriff of Cook County, from making any sale of the premises hereinafter mentioned by virtue of a certain execution in favor of appellant Wyman and against Henry A. Harris, and of the redemption made by appellant upon said execution.

Victor Friedman, appellee, filed his bill August 20, 1904, against appellant, and Barrett as sheriff, alleging that on March 11, 1893, Henry A. Harris executed to Bernhard Ritter three promissory notes for $1,000 each and a trust deed, which was duly recorded, securing them on lot 19 in block 8 in Brand's addition to Chicago; that two of the notes were afterwards paid, and the remaining note was assigned to George Schilling, and that the east thirty feet of said lot was released from the lien of the trust deed; that on November 19, 1894, Harris executed another note for $3,000 and a trust deed securing the payment of the note on lot 19, except the east thirty feet thereof, and that the trust deed was duly recorded, and that this last mentioned note became the property of Cora E. Fraser; that on April 9, 1895, Harris executed another note for $1,500 and a trust deed, which was recorded, securing it on lot 19 and other property, and that this note became the property of one Hageman, and that $500 was afterwards paid thereon; that on May 20, 1897, one Dietsch obtained a judgment against Harris for $689.81, which became a lien upon the property and on May 24, 1897, one Tegtmeyer obtained a judgment against Harris for $260.25, which also became a lien upon

Wyman v. Friedman.

said property; that on August 23, 1897, Harris conveyed the premises in question by warranty deed to Morris Kulnder; and on December 20, 1898, Kulnder executed his note for $4,000 and a trust deed to secure it on the premises in question, and that this note also became the property of Cora E. Fraser; and on April 21, 1899, Kulnder executed his note for $500 and a trust deed securing it, on the same property, and this note became the property of Hageman; that on March 28, 1899, Schilling filed his bill in the Circuit Court of Cook County to foreclose the said first mentioned trust deed of March 11, 1893, making Harris and the other parties above mentioned defendants, and in pursuance of a decree rendered in said proceedings the said premises were sold by a master in chancery on July 10, 1903, to Schilling for $1,650, and a master's certificate of sale was issued to him; that on January 5, 1900, Kulnder conveyed the premises to Pesach Miller; and on September 27, 1901, the premises were sold to one Glos for $93.78 for the non-payment of taxes thereon.

The bill further alleges that after the foreclosure sale above mentioned, Harris suggested to appellee, Friedman, that the premises in question were worth from $5,000 to $6,000, and that nearly all the liens against them and the interests therein could be acquired for less than their face value; and that if appellee should acquire the premises for less than $5,000, it would be below the probable market value; that the only compensation he, Harris, desired for such information and his assistance in obtaining the title was, that if within a reasonable time Harris should be able and willing to repurchase the premises for $5,000, appellee should then reconvey them to him or to such purchaser as he might produce, and to this appellee agreed; that acting upon this understanding, appellee proceeded to and did acquire all liens and judgments and interests the owners of which might or by any possibility could redeem from the master's sale; that between September, 1903, and June 6, 1904, he procured assignments of said notes and trust deeds held by Fraser and Hageman, said certificate of sale issued

to Glos, and took a deed of the premises from Miller, for all of which he expended upwards of $2,000.

The bill further sets up that for several months prior to June 6, 1904, appellee, through his agents and attorneys, negotiated with Schilling for the satisfaction of the deficiency remaining due him after the master's sale and for an assignment of the master's certificate of sale; that during the latter part of the foreclosure proceedings Schilling was represented by the law firm of Ives, Mason & Wyman, of which firm appellant was a member; that said firm also represented the plaintiff in a certain ejectment suit instituted March 18, 1902, in the name of Theo. H. Schültz, trustee, for the use of Schilling, for the recovery of possession of the premises in question, under the trust deed held by Schilling, in which suit judgment was obtained by the plaintiff; that during said negotiations between appellee and Schilling, one E. H. Schintz, a real estate broker, represented Schilling, and that in the course of certain negotiations E. H. Schintz consulted with appellant and that appellant, at sundry times, took part in said negotiations; that appellee through his agents and attorneys informed appellant and Schintz that his purpose in negotiating for said certificate of sale was to acquire a perfect title to said lot 19, and that he had prior thereto procured either the release or assignment of all other interests in said property, the owners of which by any possibility could redeem from the master's sale.

The bill further sets out that Harris has informed appellee that there were no judgments outstanding against either himself, Kulnder or Miller, upon which a redemption could possibly be based, and that appellee acted upon the belief that the information was true and that appellee informed Schintz and Schilling and appellant in the negotiations that unless he could procure an assignment of the master's certificate of sale he would redeem the premises from the sale; that appellee finally on June 6, 1904, procured an assignment of the certificate of sale from Schilling by paying the amount due thereon, and also the amount

of the deficiency and interest, less the rents which had been collected; that at no time until July 22, 1904, did appellee have any information or notice of any outstanding note or notes of Harris, but on the contrary had full faith and belief that none existed, and that it was under such belief that appellee purchased the certificate instead of redeeming from the sale; and of this appellant was fully aware, and yet he stood by and encouraged appellee to purchase the certificate, without giving appellee any intimation that appellant was the owner of any such note or knew of the existence thereof, or that appellant or any holder of such note intended to redeem from said sale; that appellant, in order to defraud appellee either having possession of a note or knowledge of its existence and intending to proceed upon the same, procured the entry of judgment in the Superior Court of Cook County, for $4,015 against Harris and in favor of himself, and caused an execution thereon to be levied on said premises by the sheriff, and appellant claims to have paid the sheriff $1,753, the amount for which the premises were sold by the master, with interest at six per centum per annum; and that the sheriff, on July 26, 1904, filed in the office of the recorder of Cook County a certificate of redemption and advertised the premises for sale and threatened to make the sale; that said levy and redemption are without right, and appellant is estopped from so proceeding and should be enjoined.

After setting out that the note on which judgment was entered by appellant was executed by Harris about March 11, 1893, and was secured by a trust deed on certain other real estate, and that by a decree of foreclosure in the Circuit Court of Cook County it was declared to be a second lien, and that the note was merged in the decree, the bill prays that the levy and certificate of redemption may be vacated and annulled, and appellant be forever enjoined from selling said lot by reason thereof.

By a supplemental record it appears that appellee filed in this cause his affidavit verifying the bill on August 22, 1904, two days after the bill was filed.

Appellant filed his answer to the bill on August 22, 1904, admitting the Schilling foreclosure proceeding and the sale thereunder, but denying that appellant had knowledge or notice, at any time, of the proceedings and transactions between appellee and Harris alleged in the bill, except that after the transfer of the certificate to appellee, appellant was informed that Harris had advanced money for the assignment, and that appellee took the assignment for the reason that Harris had been and was endeavoring to conceal his property in fraud of his creditors; that appellant had no knowledge or notice that appellee held or purchased the Fraser and Hageman trust deeds, or the quit-claim deed of the premises, or any other interest therein, except as a nominal holder of the certificate; admits that he acted as one of the solicitors for Schilling in the foreclosure case and in procuring judgment in ejectment, and that he advised Schintz, as agent for Schilling, in and about questions of rent, and the satisfaction of the deficiency decree, but that such services were rendered *gratis* and consisted merely in answering questions of Schintz as to the necessary form of making such settlement and transfer of certificate, and what would be his liability under facts stated by him; denies that appellee, through his attorneys and agents, told or informed appellant of the object of acquiring the certificate, or that appellee had procured releases and assignments of judgments, etc., or that appellee or his agents informed appellant that his object was to unite all such outstanding interests in appellee so that he would acquire a perfect title to the premises; avers that appellant had no knowledge or notice of any such matters, and that there are other outstanding judgments against Harris of record and unsatisfied; avers that all the negotiations with Schintz, concerning which appellant was informed, were had by Harris or by his attorney, and that appellee never took part in the negotiations and was never at the office of Schintz or appellant; denies that appellee informed appellant that he would make redemption from the sale unless he could obtain an assignment of the certificate, and avers that appellant was never

aware of any faith or belief on the part of appellee that there were no other notes or obligations of Harris, and that no such knowledge or belief was ever communicated to appellant by any one; that appellant has never been the attorney for or on friendly relations with, or acted in any respect for either Harris or appellee, and has never given any advice to either of them and has never met or seen appellee; that he has never had but one conversation with Harris, and that was upon the question of his buying the certificate and letting him into possession of the property; and that since the purchase of the certificate Harris has been making improvements on the property and acting in every way as the owner; that appellant did not know of the existence of the note held by him, and did not purchase it until after appellee had taken a transfer of the certificate, and until after the time for Harris to make redemption from the foreclosure sale had expired; that in the foreclosure proceedings of Mair v. Harris et al., no decree was entered ordering a sale of the premises to pay the amount due on the note, and that the finding of the amount due in no way produced a merger of the note.

The answer was signed and verified by appellant. No affidavits were filed or presented in support of the bill, except as above stated. The injunction was granted on consideration of the bill and answer, and arguments of counsel, without further evidence.

FRANK IVES and GEORGE H. MASON, for appellant.

J. G. GROSSBERG, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

Appellant contends (1) that the bill was not verified and that no evidence of any kind was offered in its support; (2) that he had a clear legal right to redeem, although his judgment was not a lien upon the premises; (3) the court, upon appellant's sworn answer to the bill denying the equities of the bill, should have denied the injunction; and (4) the bill does not establish against appellant an estoppel

to redeem, the material allegations of the bill with respect thereto being met by appellant's sworn answer.

Without stopping to discuss the first point made by appellant as to whether the bill is properly verified by an affidavit filed subsequently to the bill, we pass to the fundamental question involved in this appeal as to whether or not, under our statute, appellant had a legal right to redeem from the foreclosure sale. If he had not a legal right to make redemption, the question of practice as to the verification of the bill might be important and decisive of this appeal. If, on the other hand, appellant had the right to redeem under the uncontroverted facts presented by the pleadings, then, without reference to the question of estoppel, which we will consider later, the order must be reversed, whether the bill was verified or not.

Treating the bill, then, as duly verified for all the purposes of this appeal, had appellant the legal right to redeem?

. It is admitted by the pleadings that long prior to the entry of appellant's judgment against Harris, and prior to the institution of the foreclosure proceedings under which the sale was made, Harris, the judgment debtor, had conveyed all his interest in the property in question, and that the judgment of appellant was never a lien thereon. Appellee bases his contention against the right of appellant to redeem, not upon the fact that appellant's judgment was never a lien upon the premises, but upon the fact that prior to the commencement of the Schilling foreclosure proceedings, Harris had, by a voluntary conveyance, parted with his title to the property.

It is also contended by appellant and conceded by appellee that the Supreme Court has been liberal in construing the statute so as to extend the right to redeem to all grantees and judgment creditors of the person then owning the equity in the property, and to judgment creditors of the grantees of the equity. Appellee, however, maintains that the statute does not go so far, nor have any of the decisions gone so far as to permit a creditor of one who

had voluntarily conveyed all his interest in the property, before foreclosure proceedings or before the levy of an execution against the property, to redeem, and therefore appellant cannot redeem as he has attempted to do.

It was held in Sweezy v. Chandler, 11 Ill. (page 451): "It was satisfactorily answered that the judgment creditor can never redeem until the judgment debtor's rights are entirely gone, by the expiration of the twelve months within which he might have redeemed. The redemption, therefore, is never of the defendant's present estate, nor is the sale, under the junior judgment, of the defendant's interest."

A similar question to the one now before us was involved in McRoberts v. Conover, 71 Ill. 524. In that case John Mullaney's title and interest in the property had, by sheriff's deed, passed to Donlan & Chandler long prior to the entry of the McRoberts judgment, under which it was sought to redeem from a prior foreclosure sale. It was held that McRoberts was entitled to redeem. It is true that Mullaney, in the above case, did not part with his title and interest in the property by voluntary conveyance as Harris did, but we cannot perceive that the mere fact that title passed from the judgment debtor, by a voluntary conveyance instead of by operation of law, under a sale by a sheriff or master in chancery, can affect the question of the right to redeem.

The opinion of the court in Fitch v. Wetherbee, 110 Ill. 475, seems to be the most exhaustive expression of the law of this State on the question now before us to which our attention has been directed, and we find there among other expressions applicable to this case the following on page 489 :

" Whoever else may redeem in such cases, it hardly admits of a doubt the judgment creditor of the mortgagor is one of the persons that may redeem under the provision of the statute.

" Plainly, then, any decree or judgment creditor of the mortgagor may redeem from the mortgage sale, where no

one having a right to redeem the property within twelve months from the date of the sale elects to exercise that privilege. And it makes no difference whether the mortgagor had conveyed his equity of redemption, or whether it had been sold on execution before the foreclosure sale. The previous decisions of this court accord with this construction of the statute."

Appellant was a judgment creditor of the mortgagor Harris and as such falls within the meaning and intent of the statute, as construed by the Supreme Court, and was, in our opinion, entitled to redeem.

It remains for us to consider whether appellant is estopped from exercising his right to redeem by anything which is alleged in the bill of complaint.

In considering this branch of the case we are disposed to treat the bill as duly verified for the purposes of the motion for the injunction now before us, whether it be so or not.

With respect to the allegations regarding appellant's conduct it must be observed that appellant was not appellee's attorney, nor did he stand in any relation to appellee which made it his duty to advise him as to the law or the facts regarding the financial status of Harris, or his outstanding obligations. Harris had assumed to give appellee information and advice regarding these matters upon which he was acting. The bill does not allege that at the time the negotiations for the purchase of the certificate of sale were progressing, appellant either held the note in question or knew of its existence. The averments of the bill are in the alternative, and neither alternative is positively stated. And further, from the facts of the case as stated in the bill, it appears that the allegation is not based on the personal knowledge of appellee in that regard; nor are any facts stated from which the court can infer such personal knowledge. As against this are the positive denials and averments of the answer. These are sworn to and on a motion for a preliminary injunction a sworn answer may be used and treated as an affidavit. The answer shows that appellant did not own the note or know of its existence until after appellee's time of redemption had expired.

It is not shown by the bill that appellee relied on anything that appellant said or did. The substance of the alleged estoppel, as we read the averments of the bill, consists in the failure to inform appellee in regard to the note on which appellant entered judgment, and its ownership at the time of the negotiations for the purchase of the certificate. These averments are fully met by the answer. Both parties appear to have known nothing about these facts at the time, and from all that the record shows their means of knowledge and information were equal. In such a situation no estoppel can be predicated upon concealment or silence. Knapp v. Jones, 143 Ill. 375; Davidson v. Young, 38 Ill. 145. In Riss v. Hanchett, 141 Ill. 419, it is said on page 424: "An essential of estoppel by conduct is that the misrepresentation or concealment of material facts must have been with knowledge of such facts." Pease v. Trench, 98 Ill. App. 24; Bradley v. Lightcap, 202 Ill. 168.

We do not think appellant was estopped by any facts properly averred in the bill, and the order in question cannot be sustained on that ground.

It is contended by appellee that the decree in Mair v. Harris et al., set up in the bill, was a final decree, and that the Harris note upon which appellant caused judgment to be entered was merged into the decree; and if it was so merged, a mere assignment of the note, without an assignment of the decree, does not make appellant a creditor of Harris.

The bill shows that on May 26, 1900, a decree was entered by the Circuit Court of Cook County in the case of Mair v. Harris et al., then pending in said court, declaring that Mair's trust deed was a first lien upon the premises therein described, and that appellant's note then owned by Adeline Lobstein, executrix, was a second lien, under the trust deed securing it, subject to the Mair trust deed, and that there was then due from Harris to the owner of the note the sum of $3,208. Nothing is averred in the bill as to service upon Adeline Lobstein, or whether she appeared or answered, or whether any relief was prayed by her in any pleading. From what appears in the bill, Lobstein could not have obtained an execution against Harris on the decree. It was

a mere finding which would have enabled Lobstein as second mortgagee to have participated in any surplus proceeds of the sale, if any, after the payment of the first mortgage. Neither a sale of the premises nor possession thereof could be obtained under the decree. The decree gave the holder of the note no means to enforce the satisfaction of his debt, and it was in no legal sense a foreclosure of the mortgage securing the note, or a judgment thereon.

"Merger, in the law of contracts, is the absorption or extinguishment of a security of a lower legal degree in another of a higher legal degree." 20 Am. & Eng. Encyc. (2nd ed.), 596.

The holder of a note secured by a mortgage has several legal remedies, any one or all of which he may pursue, concurrently with the others or successively, until he obtains satisfaction. Fish v. Glover, 154 Ill. 86, and cases cited. To hold, therefore, that the mere finding in the decree of the amount due on the note, merged the note in the decree, would be to say that the greater security was merged into a less security. This we are not prepared to hold. In the case of Brown v. Schintz, 203 Ill. 136, plaintiff was permitted to maintain ejectment on a trust deed upon which, and the note secured thereby, it had been adjudged and decreed in the case of Wheatman v. Brown, a chancery proceeding in the Circuit Court of Cook County, wherein Brown and wife, Schintz, trustee, and Huber, were parties, that there was due Huber, secured by this trust deed, $1,069.73. It is obvious that if the note was merged in that decree, so, also, was the trust deed, and no action could have been founded upon it. If there was a merger in that case, there was an entire extinguishment of all remedies upon the note and trust deed. The Supreme Court affirmed the judgment of the Circuit Court, thus in effect holding there had been no merger.

In our opinion the note in question here was not merged in the decree.

This disposes of the material questions involved in this appeal. The order of injunction is reversed.

*Reversed.*